UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| GEORGIA-PACIFIC LLC,<br><br>              Plaintiff,<br>    v.<br><br>OFFICEMAX INC, et al.,<br><br>              Defendants.<br>_____/ | No. C 12-02797 LB<br><br>**ORDER REGARDING JOINT DISCOVERY DISPUTE LETTERS DATED JANUARY 17, 2014, JANUARY 22, 2014, AND FEBRUARY 7, 2014**<br><br>[Re: ECF Nos. 132, 134, 141] |

## INTRODUCTION

Georgia-Pacific LLC ("Georgia-Pacific") sued OfficeMax Incorporated ("OfficeMax"), Louisiana-Pacific Corporation ("Louisiana-Pacific"), and the City of Fort Bragg, seeking damages, indemnification, contribution, and declaratory relief under state and federal law for the alleged contamination of a lumber mill site at 90 West Redwood Avenue, Fort Bragg, California (the "Site"). Defendants have filed counter- and cross-claims against each other and Georgia-Pacific. Judge Orrick, who is presiding over this action, referred discovery disputes to the undersigned for resolution. Currently, there are three joint discovery dispute letters that are pending. On January 17, 2014, Georgia-Pacific and the City of Fort Bragg filed a letter describing their dispute regarding Georgia-Pacific's responses to the City of Fort Bragg's interrogatories. 1/17/2014 Letter, ECF No. 132. On January 22, 2014, Georgia-Pacific and OfficeMax filed a letter describing their dispute regarding Georgia-Pacific's desire to "clawback" certain documents it produced to OfficeMax. 1/22/2014 Letter, ECF No. 134. And on February 7, 2014, Georgia-Pacific and Defendants filed a

letter describing their dispute about whether Defendants may look at inadvertently produced emails that are designated as privileged in order to contest those designations. 2/7/2014 Letter, ECF No. 141. The court heard oral argument from the parties on February 27, 2014 and rules as follows.

## ANALYSIS

### I. THE DISPUTE CONCERNING GEORGIA-PACIFIC'S RESPONSES TO THE CITY OF FORT BRAGG'S INTERROGATORIES

On August 8, 2013, the City of Fort Bragg served 13 interrogatories on Georgia-Pacific. ECF No. 133-1 (interrogatories). The interrogatories generally requested information regarding (1) the location and amount of wastes produced by Georgia-Pacific and disposed at the Site (Interrogatory Nos. 1, 2, 3, 7, 8, 9), (2) the basis for the City of Fort Bragg's alleged liability (Interrogatory No. 4), (3) Georgia-Pacific's operations at the Site (Interrogatory Nos. 5, 6), (4) Georgia-Pacific's investigation of the Site (Interrogatory No. 10), (5) the profits made by Georgia-Pacific (Interrogatory No. 11), and (6) the response costs claimed by Georgia-Pacific (Interrogatory Nos. 12, 13). Georgia-Pacific served its original interrogatory responses on September 23, 2013. ECF 133-2 (original responses). In those responses, Georgia-Pacific said that it made available 276 boxes of documents to the City of Fort Bragg and referenced large page ranges of documents within them that it believes are responsive to the interrogatories. After meeting and conferring with the City of Fort Bragg, it served supplemental responses on December 18, 2013. ECF Nos. 133-3 (first meet and confer letter), 133-4 (second meet and confer letter), 133-5 (supplemental responses). The supplemental responses are in addition to, rather than superseding of, the original responses.

The City of Fort Bragg takes issue with Georgia-Pacific's original and supplemental responses. First, it asserts that many of the documents Georgia-Pacific refers to are not Georgia-Pacific's own business records but instead are the records of other entities, and under Federal Rule of Civil Procedure 33(d) Georgia-Pacific may produce only its own business records in response to an interrogatory. Second, it asserts that the page ranges that Georgia-Pacific provided are not specific enough.

At the hearing, the court discussed how identification of documents by page ranges can be helpful, but it is not a substitute for answers to the interrogatories. Many of the documents that

1  Georgia-Pacific is producing are not its own documents, and so it cannot avail itself of Rule 33(d)
2  for those documents. *See* Fed. R. Civ. P. 33(d) ("If the answer to an interrogatory may be
3  determined by examining, auditing, compiling, abstracting, or summarizing <u>a party's</u> business
4  records . . . .") (emphasis added). The parties agreed that further supplementation was appropriate,
5  saying that they were in the process of deposing a Rule 30(b)(6) witness who providing helpful
6  information regarding those documents and referring to specific pages, and those answers would
7  allow Georgia-Pacific to supplement its answers. The parties agreed that the issue thus is resolved.

**II. THE DISPUTES CONCERNING THE "CLAWBACK" AGREEMENT**

9  On June 10, 2013, Georgia-Pacific produced to OfficeMax a disc containing about 17,000 pages
10 of documents. Eighteen days later, on June 28, 2013, Georgia-Pacific notified OfficeMax in writing
11 that it "had just discovered that its document vendor inadvertently produced" 503 privileged.
12 Georgia-Pacific did not specifically identify, by bates number, the privileged documents at this time.
13 Instead, Georgia-Pacific asked OfficeMax to return the entire disc. OfficeMax refused to return the
14 entire disc and instead told Georgia-Pacific that it needed to specifically identify the privileged
15 documents to be returned. About 3.5 months later, on October 11, 2013, Georgia-Pacific
16 specifically identified the privileged documents by including them on a privilege log and provided
17 OfficeMax with a replacement disc that omitted the privileged documents. Georgia-Pacific now
18 wants to "clawback" the privileged documents that OfficeMax has not returned or destroyed.
19 Before any of this started, the parties agreed to a stipulated protective order that governs the
20 inadvertent productions of privileged materials. *See* Protective Order, ECF No. 79. It provides in
21 relevant part:

> I. APPLICABILITY
>
> 1. . . . This Order shall be applicable to and govern all . . . documents produced in response to requests for production of documents . . . and all other information or material produced, made available for inspection, or otherwise submitted and transmitted by any of the Parties in this litigation pursuant to the Federal Rules of Civil Procedure . . . or pursuant to a Public Records Act Request to the City of Fort Bragg ("City"), or by informal exchange and communication between the Parties (collectively "Information"). . . .
>
> . . .
>
> II. PRODUCTION OF DISCOVERY MATERIALS CONTAINING POTENTIALLY PRIVILEGED INFORMATION

   3. The inadvertent production of <u>any privileged, work product protected or otherwise exempted Information ("Protected Information")</u> shall not be deemed a waiver or impairment of any claim of privilege, work product protection or exemption including, but not limited to, the attorney-client privilege, the production afforded to work product materials, privileges afforded the City under applicable California code sections or case law or the subject matter thereof as to the inadvertently produced Protected Information as long as the producing Party adheres to the terms of this Order[.]

   4. <u>The producing Party must notify the receiving Party promptly, in writing, upon discovery that such Protected Information has been produced.  Upon receiving written notice from the producing Party that such privileged, work product protected, or exempted Information has been produced, such Information, and all copies thereof, shall be returned to the producing Party within ten (10) business days of receipt of such notice and the receiving Party shall not use such Protected Information for any purpose, except as provided in paragraph 5, until further Order of the Court.</u>  The receiving Party shall also attempt, in good faith, to retrieve and return or destroy all copies of the Protected Information in electronic format.

   5. <u>The receiving party may contest the privilege, work product, or other exemption designation, by the producing Party.  The receiving Party contesting the designation</u> shall give the producing Party written notice of the reason for said disagreement and <u>shall be entitled to retain one copy of the disputed Protected Information for use in resolving the dispute</u>. . . .  In a contest over the proper designation of the Information, the receiving Party shall, within fifteen (15) business days from the initial notice by the Producing Party, seek an Order from the Court compelling the production of the Protected Information.  If no such Order is sought, upon expiration of the fifteen (15) day period, all copies of the disputed Protected Information shall be returned to the Producing Party.

   6. <u>Any analyses, memoranda or notes which were internally generated based upon the disputed Protected Information shall immediately be placed in sealed envelopes, and shall be destroyed in the event that</u> (a) the receiving Party does not contest that the Protected Information is privileged or otherwise protected, or (b) <u>the Court rules that the Information is privileged or otherwise protected</u>.  Such analyses, memoranda or notes may only be removed from the sealed envelopes and used for their intended purposes in the event that (a) the producing Party agrees in writing that the Information is not privileged or otherwise protected, or (b) the Court rules that the Information is not privileged or otherwise protected.

   7. Nothing in this agreement shall relieve a Party of any obligation that it might have regarding the use of knowingly privileged Information. . . .

*Id.* at 2-4 (emphasis added).

 As discussed at the hearing, under the circumstances presented here, the court finds Georgia-Pacific's original notice was prompt.  It should have identified its specific bates ranges earlier that it did, and it also did not need to wait to send its privilege log, but the court does not construe this as a waiver of any applicable privilege.

 The other issue is whether Defendants (including OfficeMax in this particular situation, or other

1  Defendants, in future situations) can retain inadvertently produced documents to dispute any
2  privilege designations by the producing party.  Paragraph 5 of the parties' Protective Order allows
3  Defendants to do that.  Georgia-Pacific points to Paragraph 5's 15-day time period for moving to
4  compel, and argues that Defendants are barred from keeping the information, but given Georgia-
5  Pacific's timeline for producing a privilege log, and on this record, the court does not apply the
6  timeline against OfficeMax.  Thus, the process described in Paragraph 5 of the Protective Order
7  applies.  That process contemplates that once a producing party inadvertently produces privileged
8  documents, the receiving party can retain the documents "for use in resolving the dispute" and then
9  – unless it seeks a court order – it must return the information.  Given the volume of information
10 produced by Georgia-Pacific, its attempts to work out its discovery disclosures (as set forth in the
11 order), and the need for an orderly production of what Georgia-Pacific describes as high-volume of
12 discovery, the parties have incentives to try to work things out next week at their meet-and-confer
13 next week.

**CONCLUSION**

15 This disposes of ECF Nos. 132, 134, 141.

16 **IT IS SO ORDERED.**

17 Dated: February 28, 2014                                   _____
                                                              LAUREL BEELER
18                                                            United States Magistrate Judge