UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| GEORGIA-PACIFIC LLC,<br><br>　　　　　Plaintiff,<br>　　v.<br><br>OFFICEMAX INC, et al.,<br><br>　　　　　Defendants.<br>_____/ | No. C 12-02797 WHO (LB)<br><br>**ORDER REGARDING THE PARTIES' DISCOVERY DISPUTE LETTERS DATED APRIL 1, 2014, APRIL 2, 2014, AND APRIL 7, 2014**<br><br>[Re: ECF Nos. 150-156] |

**INTRODUCTION AND STATEMENT**

On April 1, 2014, Georgia-Pacific LLC ("GP") and OfficeMax Inc. ("OfficeMax") filed a joint letter asking the court to resolve a dispute about the sufficiency of the testimony of one of GP's corporate deposition witnesses. *See* 4/1/2014 Letter, ECF No. 150. The next day, on April 2, 2014, GP and the City of Fort Bragg (the "City") filed five letters of their own, four of which relate to the sufficiency of the testimony of GP's corporate deposition witnesses and one of which relates to discovery GP seeks about a 2008 "computer crash" that affected the City's electronic records. *See* First 4/2/2014 Letter, ECF No. 151; Second 4/2/2014 Letter, ECF No. 152; Third 4/2/2014 Letter, ECF No. 153; Fourth 4/2/2014 Letter, ECF No. 154; Fifth 4/2/2014 Letter, ECF No. 155. And on April 7, 2014, GP and the City filed another letter, which relates to the City's challenge to GP's withholding of certain documents as privileged. *See* 4/7/2014 Letter, ECF No. 156. The court held a hearing on all seven letters on April 17, 2014. *See* 4/17/2014 Minute Order, ECF No. 161. Upon consideration of the letters submitted, the discussion at the April 17, 2014 hearing, and the

C 12-02797 WHO (LB)
ORDER

applicable legal authority, the court orders additional deposition time as set forth below.

## ANALYSIS

## I. THE DISPUTES ABOUT THE SUFFICIENCY OF GP'S CORPORATE DEPOSITION WITNESSES

In February 2014, OfficeMax, the City, and Louisiana-Pacific Corp. ("LP") (collectively, "Defendants") jointly served a deposition notice under Federal Rule of Civil Procedure 30(b)(6) requiring GP to testify about 112 distinct topics. Several individuals testified on GP's behalf at the deposition that apparently occurred over a four-day period. OfficeMax and the City now complain that GP's witnesses were not sufficiently prepared for the deposition. The court addresses each complaint in turn below.

### A. GP and OfficeMax's 4/1/2014 Letter (ECF No. 150)

GP and OfficeMax's dispute is about GP's corporate witness's testimony about Topic No. 6, which asked GP to testify about "GP's efforts to identify, collect, preserve and process documents, including but not limited to electronic data, potentially relevant to the issues in the case or as requested in discovery." To testify about this topic, GP produced an attorney from its legal department, Michael Davis, who came to deposition with a 4-page "cheat sheet" that was prepared by GP's outside counsel, Hunton & Williams LLP. Mr. Davis did not assist in the preparation of this document, and he prepared for the deposition only by reviewing it. When asked questions on the topic during the deposition, he referred only to the cheat sheet and could not provide any information that was not on it. As OfficeMax recounts, Mr. Davis was not able to provide substantive answers to many general questions about GP's collection and processing of electronically stored information or to follow-up questions concerning the information that was contained in the cheat sheet.

OfficeMax says that Mr. Davis's testimony was insufficient under Rule 30(b)(6), as GP did not fulfill its duty to produce a witness who could competently testify on its behalf about Topic No. 6. Instead, GP produced a witness who could only parrot 4 pages of statements made by GP's outside counsel. GP says that Topic No. 6 was broadly written and asked about GP's collection and processing of documents at a high-level, and that was the level at which Mr. Davis came prepared to

1  discuss the topic.

2  In the end, a witness cannot simply be a mouthpiece for outside counsel. *See, e.g., In re*
3  *Neurontin Antitrust Litig.*, MDL No. 1479, Master File No. 02-1390, 2011 WL 2357793, at *5-7
4  (D.N.J. June 9, 2011). That being said, as the court said at the hearing, there is a tension between a
5  Rule 30(b)(6) deposition notice with 112 categories and GP's ability to prepare witnesses to answer
6  questions effectively. To make that process more productive, at the hearing, the court ordered a
7  meet-and-confer that must include the parties' technical experts. On GP's side, that probably means
8  someone in charge of IT. After that meet-and-confer, which will illuminate the document collection
9  and retention landscape, the attorneys must confer about how to make the follow-up Rule 30(b)(6)
10 deposition productive. The court orders additional deposition time of no more than three hours.

11 Counsel initially asked for the additional deposition to be in San Francisco (as opposed to in
12 Atlanta). For the reasons discussed and agreed to on the record, all additional depositions will be in
13 Atlanta.

14 **B. GP and the City's First 4/2/2014 Letter (ECF No. 151)**

15 GP and the City's first dispute is about GP's corporate witness's testimony about Topic Nos. 67,
16 70, and 71, which asked GP to testify about "Any investigation prior to 2002 regarding whether any
17 operation at the mill site produced dioxin," "Any analysis or investigation done by GP prior to 2002
18 regarding the presence of dioxin at any of the facilities that GP operated in the United States," and
19 "Any analysis or investigation that was in GP's possession prior to 2002, regardless of whom the
20 author was, regarding any environmental or human health dangers posed by exposure to dioxin,"
21 respectively. To testify about these topics, GP produced Richard Hilarides. During the deposition,
22 Mr. Hilarides testified that he believed it GP was required, or at least expected, to conduct a
23 beneficial reuse analysis that would have examined soil from the mill site to see if it contained
24 dioxins, but he also testified that he had not seen such an analysis and did not know if one had been
25 done. When asked why he did not ask to see whether a beneficial reuse analysis had been done, he
26 testified that he had not thought about it until then (*i.e.*, during the deposition).

27 The City believes that Mr. Hilarides's testimony about the beneficial reuse analysis shows that
28 GP did not adequately prepare him as a corporate witness, and it asks the court to require GP to

1  produce a witness who can discuss the beneficial reuse analysis.  GP argues that the City's topic did
2  not encompass beneficial reuse analyses, and even if it did, there is no evidence that one was done
3  and so there is nothing for another witness to be deposed about.

4  As discussed at the hearing, the topic put GP on notice about beneficial reuse analyses.  Given
5  that Mr. Hilarides testified that one probably or should have occurred, the topic is relevant.  As
6  discussed at the hearing, GP should prepare Mr. Hilarides based on the relevant documents.  GP
7  needs to find out if a beneficial reuse analysis was done.  If it was, Mr. Hilarides can look at it and
8  tell the City what it says.  If it was not done, and based on the available documents that have been
9  produced, Mr. Hilarides can shed light on why it was not done.

**C. GP and the City's Second 4/2/2014 Letter (ECF No. 153)**

GP and the City's second dispute is about GP's corporate witness's testimony about Topic Nos. 25 and 29, which asked GP to testify about "All materials, including but not limited to any wastes or other than bark and wood waste, that were burned at any time in any of the boilers used on the mill site," and "Any alleged violations of any regulations set by [the Air Quality Management District] for the mill," respectively.  From 2000 to 2002, GP burned "municipal wood waste" containing plastics and other materials and contaminants associated with municipal landfills, which resulted in dioxin contamination for which GP was fined by the Air Quality Management District.  To testify about the two deposition topics, GP produced Mr. Hilarides.

The City argues that he was not adequately prepared for the deposition because during it, he testified that he did not have any knowledge about the suppliers of the municipal wood waste that GP burned and had not reviewed several internal GP documents (which GP produced to the City in discovery) that discussed how much of the fuel burned was municipal wood waste.  GP argues that neither of the deposition topics put it on notice that its witness would need to know about the specific suppliers of the municipal wood waste.  Instead, GP argues, the topics asked about the types of materials burned, and Mr. Hilarides testified about that.

Given the number of deposition topics, GP's reading of the topic to include only the materials (as opposed to their source) was reasonable.  As the court said at the hearing, it makes sense that GP would read the topic fairly literally given that it had to prepare for 112 topics and the resulting

1 reality that only a short period of time was available for any given topic.  That being said, the City
2 articulated its reasons on the record for wanting information about the source.  Mr. Hilarides has to
3 testify about other topics anyway.  With GP's agreement and the parties' agreement that depositions
4 would be in Atlanta, everyone agreed to the additional deposition time.

5   The court orders additional deposition time of no more than four hours for all topics as to Mr.
6 Hilarides.

### D.  GP and the City's Third 4/2/2014 Letter (ECF 153)

8   GP and the City's third dispute is about GP's corporate witness's testimony about Topic No. 50,
9 which asked GP to testify about "Any discussions with TRC regarding the Phase I and Phase II site
10 investigations, including whether the dioxins and/or the ponds at the mill site should be discussed in
11 the Phase I and Phase II site investigations."  TRC was GP's environmental consultant that
12 conducted two environmental site assessments ("ESAs").  During the consultant's deposition, the
13 consultant testified that he was instructed by GP's then-environmental project manager for the mill
14 site, Julie Raming, not to investigate the mill site for dioxins or the mill site's ponds for
15 contamination.  This interests the City because it says GP subsequently represented that the ESAs
16 indicated that there was little contamination at the mill site.

17   GP designated Mr. Davis, one of its in-house attorneys, to testify about this topic.  When asked
18 about Ms. Raming's instruction to GP's consultant, Mr. Davis testified that he had no knowledge
19 about it.  But when asked about how he prepared for the deposition, he stated that Ms. Raming
20 (along with Hunton & Williams LLP, which represents both GP and Ms. Raming, who is now
21 retired) participated in the preparation but that her conversation with the consultant never came up.
22 He also testified that he probably should have asked her about the conversation during his
23 preparation.

24   By failing to address the conversation during Mr. Davis's preparation, the City argues that GP
25 did not fulfill its duty to properly prepare him to testify about the topic.  GP argues that it had no
26 obligation to prepare Mr. Davis to testify about specific conversations between anyone and that he
27 provided more than enough testimony about the topic.

28   For the reasons discussed on the record, GP must prepare Mr. Davis, and the City has an

1  additional hour to depose him.

    **E.  GP and the City's Fourth 4/2/2014 Letter (ECF No. 154)**

GP and the City's fourth dispute is about GP's corporate witness's testimony about Topic No. 9, which asked GP to testify about "The calculation and determination of GP's reserves for accounting purposes with regard to its environmental liabilities at the former Fort Bragg mill site." At the deposition, GP allowed its witness, Mr. Hilarides, to testify about how GP generally sets reserves, but prohibited him from testifying about the amounts of the reserve or how the reserve was calculated.

GP argues that its reserves are not relevant to this action because they are only a preliminary approximation of future expenses required to clean up a site and to litigate about it. GP says that the reserves have no bearing upon which parties caused the contamination at the mill site, how much money was spent cleaning it up, or how the liability for it should be allocated. GP also contends that the reserves are protected from disclosure by the attorney work product doctrine because they reveal the thoughts and opinions of GP's legal counsel and were developed in anticipation of litigation. The City argues that the reserves were established for accounting and business purposes, no attorneys were involved in the setting of the reserve amounts, and were not prepared in anticipation of any litigation.

As the parties conceded on the record, any relevance here is about actual information about contamination. That is regular discovery. If there is attorney work product or privileged information, GP must follow the procedures in the court's standing order about asserting privilege.

**II. THE DISPUTE ABOUT THE 2008 COMPUTER CRASH (ECF No. 155)**

Last month, the City informed GP that a "computer crash" occurred in 2008 that wiped out all of the City's emails at that time. According to the City, none of the date was recoverable or backed-up, and all of the affected equipment, including the malfunctioning server, was disposed of. Not surprisingly, GP wants to find out more about this, so it sent the City a draft Rule 30(b)(6) deposition notice seeking the City's testimony about the loss of the data. GP proposed that this Rule 30(b)(6) deposition be in addition to the already-planned Rule 30(b)(6) of the City on the substantive issues of this case. The City does not dispute that GP should be able to depose it about

1 the loss of the data, and it is not refusing to produce a witness on the topic. The City does, however,

2 disagree with having a separate Rule 30(b)(6) deposition on the topic. It believes that the computer

3 crash and the substantive issues for this case can all be discussed in a single Rule 30(b)(6)

4 deposition.

5 The court orders the same informal meet-and-confer with technical experts that it ordered

6 previously. On this record, the court does not order additional deposition time. If the meet-and-

7 confer reveals a more robust landscape that GP will need more time to look into, the parties must

8 confer and try to settle on additional reasonable time. If they cannot agree, they must contact the

9 court.

## III. THE DISPUTE ABOUT DOCUMENTS GP HAS WITHHELD AS PRIVILEGED (ECF No. 156)

12 On April 7, 2014, GP and the City filed a letter describing a dispute about GP's withholding of

13 certain documents as protected by the attorney-client privilege. Specifically, GP has withheld a

14 certain number of emails because they were between one of GP's three outside consultants and one

15 of GP's two in-house attorneys. The City says that one of the attorneys, Carol Stephens, already

16 testified that she never acted for GP in her capacity as an attorney; instead, she worked as GP's

17 director of real estate at all relevant times. The City also says that GP's other attorney, Mr. Davis,

18 testified that he was not involved with the mill site until late 2005 or early 2006 and that he was only

19 ever copied on emails to or from the outside consultants so that he would kept in the loop, so to

20 speak. The City also argues that GP nevertheless has waived the privilege, as it has already

21 produced numerous emails between the consultants and these two attorneys. GP does not appear to

22 challenge the City's arguments but instead says that it wants the court to conduct an in camera

23 review of the withheld documents at issue in this letter and all future letters (which GP suggests are

24 forthcoming).

25 On this record, it appears that Ms. Stephens's emails are not privileged or work product. The

26 court discussed its privilege review procedures and the need for the parties to do their work before

27 raising disputes like this or suggesting in camera review.

**CONCLUSION**

The court grants the requests for additional deposition time. This disposes of ECF Nos. 150 to 156.

**IT IS SO ORDERED.**

Dated: April 17, 2014

_____
LAUREL BEELER
United States Magistrate Judge