UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGIA-PACIFIC,<br><br>   Plaintiff,<br><br>   v.<br><br>OFFICEMAX INCORPORATED, et al.,<br><br>   Defendants. | Case No. 12-cv-02797-WHO<br><br>**ORDER GRANTING CITY OF FORT BRAGG'S MOTION FOR LEAVE TO AMEND ANSWER AND DENYING GEORGIA-PACIFIC LLC'S MOTION FOR LEAVE TO AMEND AND FOR PARTIAL DISMISSAL**<br><br>Re: Dkt. Nos. 163, 164 |

Defendant City of Fort Bragg ("the City") asserts that it discovered in a deposition on January 15, 2014 that plaintiff Georgia-Pacific LLC ("GP") purposefully concealed high dioxin levels at the polluted site involved in this action brought under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 *et. seq*. in a report prepared by GP's environmental investigators. As a result of that testimony, and other facts the City claims it discovered recently, the City moves for leave to amend its Answer and Counterclaim to GP's Second Amended Complaint in order to modify and add affirmative defenses, and add counterclaims against GP alleging fraud, negligent misrepresentation, breach of contract, and declaratory relief.

GP opposes the City's motion because of undue delay, prejudice and futility. It also moves for leave to amend its Second Amended Complaint ("SAC") to eliminate its state-law claims and to urge me to dismiss the current and proposed state-law claims alleged by the City by declining to exercise supplemental jurisdiction under 28 U.S.C. § 1367.

If proven, the City's new allegations appear relevant to the allocation of damages under GP's CERCLA claims. They will not predominate over the CERCLA claims. It would be inefficient and expensive to require a second, state court trial by precluding the City from bringing

its state-law claims here. The City's amendment is timely and not futile. GP is not prejudiced by the amendment. Having considered the arguments of counsel at the hearing on June 11, 2014, I GRANT the City's motion and DENY GP's motion.

## BACKGROUND

GP seeks recovery under CERCLA for cleanup costs GP has incurred and will incur due to the contamination of certain real property located in Fort Bragg, California (the "Site") from defendants OfficeMax Incorporated, Louisiana-Pacific Corporation ("LP"), and the City.[1] SAC ¶ 1. The Site is contaminated with various hazardous substances, including "metals, dioxins, polycyclic aromatic hydrocarbons and petroleum hydrocarbons" in "the soil and groundwater underlying the Site and the surrounding soils and groundwater." SAC ¶ 11. In February, 2007, the California Environmental Protection Agency, Department of Toxic Substances and Control, ordered GP to conduct a response action at the Site. SAC ¶ 13. GP "has expended approximately $31,400,000 in response costs at the Site arising from releases and threatened releases of hazardous substances" and "anticipates incurring significant future response costs at the site." SAC ¶ 14.

GP's Second Amended Complaint alleges that OfficeMax is liable to contribute to the costs of remediation of the Site because operations by its predecessors in interest during their ownership of the land allegedly led to the release of hazardous materials into the soil and groundwater.[2] SAC ¶¶ 11, 15-16. It claims that the City is also liable for the Site's contamination due to its ownership and operation of a stormwater system which allegedly conveys toxic substances onto the Site. SAC ¶¶ 25-29. The remaining causes of action against OfficeMax and

---

[1] I have approved GP's Joint Motion for Settlement Agreement with LP, and the stipulation of OfficeMax, the City, and LP for dismissal of LP's claims. Dkt. Nos. 185, 186. I have also approved an agreement between GP and Office Max to dismiss the state law claims they had against each other.

[2] Until November 1, 2004, OfficeMax was known as Boise Cascade Corporation ("Boise"). SAC ¶ 16; Br. 5; Dkt. No. 86 at 5. On October 7, 1968, Boise merged with Union Lumber Company and assumed all its "debts, liabilities, obligations, and duties," which included the Site at issue here. Boise Cascade Corporation sold the Site to GP in 1973. SAC ¶ 1, 16. GP operated a lumber production facility on the Site until August 8, 2002. SAC ¶¶ 9-10. In 2009, GP sold a portion of the Site known as "Glass Beaches" to the City. Am. Countercl. (Dkt. No. 163-2) ¶ 5. The Site is currently unoccupied except for a GP office and a water treatment plant owned by the City. SAC ¶ 9.

the City seek damages, indemnification, contribution, and declaratory relief.

The City's answer and counterclaims respond that it had no control over the use of stormwater at the Site, and that any movement of stormwater was exclusively controlled by OfficeMax's predecessor in interest, Union Lumber Company, through a dam system under its exclusive control.  Dkt. No. 94, Countercl. ¶¶ 15-17.  The City asserts fifty-four affirmative defenses, cross-claims against OfficeMax, and six counterclaims against GP.[3]

### A. The City's Proposed Amendments

According to the City, discovery taken after the filing of its answer and counterclaims has revealed that GP purposefully concealed high dioxin levels at the Site by failing to disclose dioxin levels in a report prepared by environmental investigators.  The City asserts that it had no notice of GP's alleged concealment until the January 15, 2014 deposition of Mohammed Bazargani.  Blum Decl. ¶ 4.  Bazargani was an employee of TRC, the environmental consulting firm retained by GP to investigate the Site between 2002 and 2005.  He testified that he was instructed by Julie Raming, a GP employee, to withhold testing for possible dioxin contamination because another company was tasked with dioxin investigation.  Blum Decl. Ex. 3, Deposition of Mohammed Bazargani ("Bazargani Depo."), at 115:23-116:14, 118:10-18.  These instructions came after he recommended that dioxins be part of the report.  *Id*. at 191:18-192:7.  Environmental testing protocols required that the report state whether dioxins were investigated.  Blum Decl., at ¶ 4.  The resulting report states that it was prepared according to these protocols, however, it does not mention dioxins.  Bazargani Depo. at 199:21-200:2.  The report concludes that contamination at the Site is limited to petroleum and is not substantial.  Blum Decl., at ¶ 5, Ex. 4.

---

[3] The City's First Counterclaim against GP seeks contribution for response costs under CERCLA section 113(f)(1); the Second, a declaration that GP is liable to indemnify, or contribute to and reimburse, the City for all future response costs under the Declaratory Judgment Act, 28 U.S.C. § 2201; the Third, damages from GP for negligence in managing and maintaining the Site; the Fourth, a declaration that GP is liable to indemnify the City for future damages and costs under California Code of Civil Procedure Section 1060; the Fifth, equitable indemnity; and the Sixth, contribution from GP for any costs and expenses the City incurs in judicial and administrative proceedings brought against it with regard to contamination of the Site.  Dkt. No. 94, Countercl. ¶¶ 25-46.

1    The City alleges that the report was then used by GP to represent to the City that the Site
2    was not contaminated, and to enlist the City's assistance in selling a portion of the Site, a lumber
3    mill, sometime between 2002 to 2005.  Blum Decl. Ex. 1, Am. Countercl. ¶¶ 37-43.  The City's
4    cooperation was necessary to lower GP's costs of selling the mill.  Blum Decl. Ex. 2, Deposition
5    of Carol Stephens ("Stephens Depo."), at 89:23-91:11, 114:11-115:9, 123:2-6 147:13-21.  Carol
6    Stephens, the GP executive in charge of selling the mill, testified that the allegedly misleading
7    report was used to prepare talking points used in meetings with the City.  *Id*. at 80:13-81:9.

8    In 2004 it became apparent that dioxins were present at the Site.  On August 12, 2004, and
9    November 17, 2004, the California Regional Quality Control Board sent letters to GP's Julie
10   Raming that "[a] concern has been raised that dioxins may have been generated by the possible
11   burning . . . of various wastes" and that "[t]he possible presence of dioxins on site due to on-site
12   activities should be addressed."  Dkt. No. 170, Exs. A and B.[4]  The City was copied on these
13   letters.  The City assisted GP with selling the property until 2006, when GP conducted further
14   environmental testing that disclosed the presence of dioxins.   Blum Decl. Ex. 1, Am. Countercl. ¶
15   46.  GP then suspended its efforts to sell the property.  *Id*.

16   The City also alleges that since its initial answer was served, it has reviewed a 2009
17   agreement between the City and GP relating to the sale by GP to the City of areas of the Site
18   known as the Glass Beaches (the "2009 Agreement").  The City alleges that as part of the
19   Agreement, GP received monies which were to pay for the remediation of the property to
20   standards set by regulatory agencies.  Blum Decl., Ex. 1, Amd. Countercl. ¶¶ 49-51, Ex. A.  The
21   City alleges that the land was not remediated as promised by the agreement.

22   Based on these facts, the City seeks to amend its counterclaim against GP to add factual
23   allegations and four additional causes of action alleging fraud, negligent misrepresentation, breach
24   of contract, and declaratory relief under California Code of Civil Procedure section 1060 barring
25   GP from seeking reimbursement of remediation costs it was to expend under the 2009 agreement.

---

[4] GP requests that the Court take judicial notice of these documents, as well as the front page of the March 21, 2009, Fort Bragg Advocate-News which describes GP's dioxin containment efforts.  Dkt. No. 164.  The Court takes notice.

Blum Decl., Ex. 1, Amd. Countercl. ¶¶ 61-71, 76-77.

The City also seeks to amend its sixth affirmative defense for unclean hands, and add affirmative defenses numbers fifty-four through fifty-eight for: (i) offset of costs incurred by the City due to GP's alleged misrepresentations; (ii) statutory violations of unspecified environmental laws; (iii) a bar preventing GP from seeking response costs for remediation of the land sold in the 2009 Agreement; (iv) unjust enrichment as to the 2009 agreement; and (v) incorporation of its counterclaims. Blum. Decl. Ex. 1, Ans. ¶¶ 6, 54-58.

### B. GP's Proposed Amendments

GP's motion to amend seeks to eliminate its state-law claims against OfficeMax and the City for implied equitable indemnity, nuisance, and trespass. Dkt. No. 90 ¶¶ 51-62, 97-103. GP states that "as discovery has progressed, [GP] has determined that all of the costs it will seek at trial will be recoverable under CERCLA." Dkt. No. 164 at 3. GP also requests that I dismiss the current and proposed state-law claims alleged by the City by declining to exercise supplemental jurisdiction under 28 U.S.C. § 1367. Dkt. No. 164. GP asserts that the City's state-law claims will "substantially predominate" the litigation of this case and raise novel and complex issues regarding allocation of damages under CERCLA. *Id*.

### LEGAL STANDARD

Federal Rule of Civil Procedure 15(a) allows a party to amend its pleading once within: (1) 21 days after serving the pleading or (2) 21 days after the earlier of service of a responsive pleading or service of a Rule 12(b) motion. FED. R. CIV. P. 15(a). Outside of this timeframe, "a party may amend its pleading only with the opposing party's written consent or the court's leave." *Id*. A court "should freely give leave when justice so requires." *Id.* "Although the rule should be interpreted with 'extreme liberality,' leave to amend is not to be granted automatically." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) (citation omitted).

A court considers five factors in determining whether to grant leave to amend: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint." *In re Western States Wholesale Nat. Gas Antitrust Litig*., 715 F.3d 716, 738 (9th Cir. 2013) (quoting *Allen v. City of Beverly Hills*, 911

F. 2d 367, 373 (9th Cir. 1990)). "Prejudice to the opposing party is the most important factor." *Jackson*, 902 F.2d at 1387.

## DISCUSSION

### I. THE CITY'S MOTION FOR LEAVE TO AMEND

The City's motion for leave seeks to modify and add affirmative defenses, and to add counterclaims against GP alleging fraud, negligent misrepresentation, breach of contract, and declaratory relief. Dkt. No. 163. The City argues that these amendments (i) are based on newly-discovered information, (ii) are viable claims necessary to the underlying litigation, and (iii) will not prejudice any party because discovery is still open. GP disagrees, claiming that the City unduly delayed in bringing the amendments because it has been aware of the underlying facts for several years and that the amendments are prejudicial and futile. Dkt. No. 170 at 3-9. It further asserts that I should decline to exercise supplemental jurisdiction over the state-law claims alleged by any party.

#### A. The Proposed Amendments Will Not Prejudice GP

GP argues that the City's proposed counterclaims "would require [GP] to take an entirely new course of defense" and increase the complexity and length of the trial because the state-law claims would be adjudicated alongside the CERCLA claims. Dkt. No. 170 at 3-4. It says that adding the City's proposed counterclaims at this stage of the litigation "deprived [GP] of several critical opportunities to elicit deposition testimony from persons with knowledge that could be used to defeat the City's claims" including Mohammad Bazargani, Carol Stephens, and the 30(b)(6) deposition of GP. Dkt. No. 170 at 5. It asserts that it is at a disadvantage because it "may only notice 10 depositions in comparison to the defendants' collective 30." Dkt. No. 170 at 5.

"The party opposing amendment bears the burden of showing prejudice." *DCD Programs, Ltd. v. Leighton*, 833 F2d 183, 187 (9th Cir. 1987). "A need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint." *Lockheed Martin Corp.,* 194 F.3d at 986 (9th Cir. 1999) (citing *Solomon v. North Am. Life & Cas. Ins. Co*., 151 F.3d 1132, 1139 (9th Cir. 1998)). However, "[n]either delay resulting from the proposed amendment nor the prospect of additional discovery needed by

6

the non-moving party in itself constitutes a sufficient showing of prejudice." *Tyco Thermal Controls LLC v. Redwood Industrials*, No. 06-cv-07164 JF, 2009 WL 4907512, at *3 (N.D. Cal. Dec. 14, 2009).

Granting the City leave to amend will not unduly prejudice GP.  The City's claims involve the same parties and many of the same underlying facts as the claims asserted by GP in its SAC. GP still has more than three months remaining in discovery to depose witnesses related to the City's proposed amendments.  Although the new causes of actions may require GP to do some additional discovery, to date GP has not yet taken a single deposition, and the depositions of several other important witnesses, such as the City's 30(b)(6) witness, have not yet occurred.  Dkt. No. 174, Le Decl. at ¶¶ 3-4.  This factor weighs in favor of the City.

**B. The Proposed Amendments Are Not Futile or Subject to Undue Delay**

GP argues that the City has been aware of dioxin levels at the Site since at least 2004, when the California Regional Quality Control Board sent letters to GP's Julie Raming regarding its concerns.  Dkt. No. 170 at 8-9.  It notes that the City's proposed amended counterclaim states that it was aware of dioxin contamination since 2006.  *Id*. at 7; Am. Countercl. ¶ 46.  It asserts that bringing claims of fraud and negligent misrepresentation now constitutes undue delay.  Dkt. No. 170 at 8-9.  It also claims that the City's proposed counterclaims are futile because they are barred by the applicable two-year statute of limitations for tort claims, the three-year statute of limitations for fraud claims, and the four-year statute of limitations for breach of contract claims.[5]

The City responds that GP misunderstands the crux of the proposed amendments.  It stresses that "the gravamen of the fraud claim is not the mere presence of dioxins on the Site, but the fact that GP intentionally lied to the City and regulators about the severity of the dioxin contamination and GP's operations on the Site that causes such contamination."  Dkt. No. 174 at 6. It asserts that "it was not until after this litigation began that the City learned of GP's scheme to cover up the dioxin problem."  Dkt. No. 174 at 7.

"[A] proposed amendment is futile only if no set of facts can be proved under the

---

[5] *See* CAL. CODE. CIV. PROC. §§ 337, 338.

7

amendment to the pleadings that would constitute a valid and sufficient claim [ ]." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). "Because it is inequitable to bar someone who has no idea he has been harmed from seeking redress, the statute of limitations has generally been tolled by the 'discovery rule.'" *Bibeau v. Pac. N.W. Research Found. Inc.*, 188 F.3d 1105, 1108 (9th Cir.1999), amended by 208 F.3d 831 (9th Cir.2000). "Under both federal and California law, the discovery rule provides that a limitations period does not commence until a plaintiff discovers, or reasonably could have discovered, his claim…." *O'Connor*, 311 F.3d at 1147 (9th Cir. 2002) (citing *Bibeau*, 188 F.3d at 1108).

"[D]elay alone no matter how lengthy is an insufficient ground for denial of leave to amend." *United States v. Webb*, 655 F.2d 977, 980 (9th Cir. 1981). However, undue delay combined with other factors may warrant denial of leave to amend. *See, e.g.*, *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1387-89 (9th Cir. 1990) (holding that prejudice and undue delay are sufficient to deny leave to amend); *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) ("delay of nearly two years, while not alone enough to support denial, is nevertheless relevant").

The City's proposed amendments do not appear to be futile. Even though the City admits that it knew about the extent of dioxin levels at the Site in 2006, the City's amendments relate to the alleged fact that it did not know that GP had intentionally attempted to conceal dioxin information and engaged in alleged fraud and negligent misrepresentation to do so. The City argues that it was unaware that GP purposely avoided dioxin assessment during environmental testing and knowingly used a misleading report to convince the City to expend time and resources to help sell the Site. It did not know the factual bases for these allegations until the 2014 depositions of Bazargani and Stephens. Blum Decl. at ¶¶ 3-4.

Although the parties do not directly address whether the statute of limitations has expired for the City's breach of contract claim, the City alleges that it discovered information pertaining to GP's breach of the 2009 Agreement after it was signed in 2009. Since the statute of limitations for breach of contract claims under CAL. CIV. PROC. CODE § 337 is four years, it is plausible that it has not expired and these claims are not futile.

1  The City did not unduly delay in seeking its amendments. It asserts that it discovered the
2  facts to support its counterclaims in January, 2014. The City filed its motion for leave to amend in
3  April, 2014, within the deadline for filing amendments to pleadings. GP argues that a court may
4  determine that a party unduly delayed even if the motion was filed within the deadline for
5  amendments to pleadings. Dkt. No. 170 at 8-9 (citing *AmerisourceBergen Corp. v. Dialysist West,*
6  *Inc.,* 465 F.3d 946, 953-54 (9th Cir. 2006)). That case is distinguishable because the party seeking
7  leave to amend knew of the facts supporting its claim fifteen months before seeking leave to
8  amend, which was significant to the court's determination that the party had significantly delayed
9  in bringing the claim. *Id*. In contrast, the City brought its motion roughly three and a half months
10 after discovering the relevant facts.
11 Accordingly, the factors of futility and undue delay weigh in favor of the City.

### C. The Request to Dismiss the State-Law Claims is Denied

Important to my consideration of the City's motion to amend is whether I should grant GP's request in its Motion to Amend that I decline to exercise supplemental jurisdiction over the City's state-law claims. GP makes that motion even though it recognizes that "the facts necessary to confer supplemental jurisdiction are present." Dkt. No. 173 at 11. It contends that declining to exercise supplemental jurisdiction would serve the interests of judicial economy, because the City's state-law claims present novel and complex issues and will substantially predominate during litigation of this case by broadening the scope of litigation and relief. *Id*. It also contends that the City's state-law claims will lead to juror confusion and a longer and more cumbersome trial. I disagree.

Under 28 U.S.C. § 1367(a), "district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a). A district court may decline to exercise supplemental jurisdiction if "the claim raises a novel or complex issue of State law" or "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c).

Where the parties, witnesses, experts, and the evidence overlap, keeping state-law claims

together with CERCLA claims is preferable. *See e.g., Arkema Inc.v. Anderson Roofing Co. Inc.*, 719 F. Supp. 2d 1318, 1327 (D. Or. 2010) ("Although this case remains in the early stages, the number of parties and the interrelated nature of the claims favors keeping it in one piece."); *City of Merced v. Fields*, 997 F. Supp. 1326, 1336 (E.D. Cal. 1998) ("The court believes that it is better to resolve this lawsuit in a single forum, as complex a task as that may be"). The CERCLA claim remains at the heart of this suit, and the facts supporting the state-law claims relate to the CERCLA claim.[6] As an example, the facts supporting the negligent misrepresentation and fraud claims may shed light on GP's contamination of the Site. As the City notes, "[t]he gravamen of the causes of action for negligence and fraud are that GP mishandled the wastes products that were created as a result of the operations of the Site . . . GP knew that burning of the urban wastes created significant dioxin contamination." Dkt. No. 168 at 9. Whether this is true must be considered in the CERCLA claim as well. GP's transparency and cooperation with regulators, which relates to the City's negligence claim, may also be considered when determining if GP took appropriate steps to clean up the Site and how much liability to allocate to GP. The facts underlying the City's breach of contract claim may also affect CERCLA liability because if the City successfully proves the existence of the 2009 Agreement and its breach, the City may have a defense to at least part of GP's CERCLA claim.

GP also argues that the City's negligence, declaratory relief, and equitable indemnity claims should be dismissed because they are novel state-law claims but it provides little support for its argument. Dkt. No. 164 at 10-11. State-law claims such as these are commonly asserted in CERCLA cases. *See, e.g., Aggio v. Aggio*, No. 04-4357 PJH, 2005 WL 2277037, at *1 (N.D. Cal. Sept. 19, 2005) (denying a motion to dismiss a CERCLA claim and state-law claims for nuisance, equitable indemnity, and unjust enrichment); *Ferguson v. Arcata Redwood Co., LLC*, No. 03-

---

[6] The City and GP argue whether the state-law claims are related to the CERCLA claims according to the "Gore factors." Courts sometimes use "Gore factors" to determine liability under CERCLA, however, as the Ninth Circuit notes, "Congress rejected the amendment that would have listed the Gore factors as the basis for allocating liability. The trial court is therefore not limited to the Gore factors. The statutory language gives the trial court the discretion to consider 'such equitable factors as it finds appropriate'...." *Boeing Co. v. Cascade Corp.*, 207 F.3d 1177, 1187 (9th Cir. 2000) (citing 42 U.S.C. § 9613(f)(1)).

1   05632 SI, 2004 WL 2600471, at *7 (N.D. Cal. Nov. 12, 2004) (denying defendant's motion to

2   dismiss plaintiff's public nuisance, private nuisance, equitable indemnity and declaratory relief

3   claims in a CERCLA suit); *Wells Fargo Bank, N.A. v. Renz,* No. 08-02561 SBA, 2011 WL 97649,

4   at *9 (N.D. Cal. Jan. 12, 2011) (denying a motion to dismiss plaintiff's negligence claims in a

5   CERCLA suit). While the City's state-law claims are not exactly aligned to the CERCLA claim,

6   the differences in the scope of issues and recovery are not sufficient to decline supplemental

7   jurisdiction. *Kohler v. Rednap, Inc.*, 794 F. Supp. 2d 1091, 1096 (C.D. Cal. 2011) ("[T]he

8   availability of damages under state law means that the state law claims present a slightly larger

9   scope of issues and offer more comprehensive remedies. Nonetheless, the Court does not find that

10  this causes the state-law claims to substantially predominate this litigation.") (emphasis omitted).

11  Even if some of the City's claims do present novel or complex questions or predominate,

12  the interests of judicial economy outweighs these factors. *Arkema Inc.*, 719 F. Supp. 2d at 1327

13  ("Even if the Oregon Superfund Act claims pose a novel issue of state law, however, the values of

14  economy and convenience weigh heavily in favor of retaining jurisdiction over the state law

15  claims [ ]."); *Feezor v. Tesstab Operations Grp., Inc.*, 524 F. Supp. 2d 1222, 1225 (S.D. Cal.

16  2007) ("The predominance of the state law claims and the conflict in pertinent state law are such

17  factual predicates. Once that factual predicate is identified, the exercise of discretion … still is

18  informed by whether [dismissing] the pendent state claims comports with the underlying objective

19  of most sensibly accommodating the values of economy, convenience, fairness and comity.")

20  (internal citations and quotations omitted); *Acri v. Varian Associates, Inc.*, 114 F.3d 999, 1001

21  (9th Cir. 1997) ("While discretion to decline to exercise supplemental jurisdiction over state law

22  claims is triggered by the presence of one of the conditions in § 1367(c), it is informed by the []

23  values 'of economy, convenience, fairness, and comity.'"). Keeping the state-law claims and the

24  CERCLA claim together in this case would promote judicial efficiency. If supplemental

25  jurisdiction is not maintained over the state-law claims in this case, the likely result would be a

26  second suit brought by the City against GP, based on the same underlying facts. This would create

27  the type of duplicative and fragmented litigation that supplemental jurisdiction is meant to avoid.

28  Furthermore, the City has raised the concern that res judicata would bar the state-law

claims in the event that I decline supplemental jurisdiction and GP decides to pursue its claims in state court. "Res judicata, also known as claim preclusion, bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action." *Western Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997). Res judicata is applicable when there is: "(1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between parties." *Id*. "The central criterion in determining whether there is an identity of claims between the first and second adjudications is 'whether the two suits arise out of the same transactional nucleus of facts.'" *Owens v. Kaiser Foundation Health Plan, Inc.*, 244 F.3d 708, 714 (9th Cir. 2001) (citation omitted).

It is unclear whether the City's fears are justified. The state-law claims and CERCLA claim are separate, but there is overlap in the evidence that will be used to support both sets of claims - for example, whether GP burned unpermitted wastes that generated dioxins at the Site from 2000 to 2002 will go to both CERCLA liability and the City's state-law claims of negligence and fraud. Whether the state-law claims would be precluded or not, either outcome weighs in favor of denying GP's request. If the claims are precluded, then dismissing the state-law claims would deprive the City of its right to a jury trial. If the claims are not precluded, then the claims might be litigated in a later case, which undermines judicial efficiency. *See Brady v. Brown*, 51 F.3d 810, 816 (9th Cir. 1995) ("The decision to retain jurisdiction over state law claims is within the district court's discretion, weighing factors such as economy, convenience, fairness, and comity."); *Union Station Associates, LLC. v. Puget Sound Energy, Inc.*, 238 F. Supp. 2d 1226, 1230 (W.D. Wash. 2002) ("In the interests of judicial economy, and to avoid undue prejudice to the parties in having to re-start this litigation at such a late date, this Court elects to retain its jurisdiction over [plaintiff's] state law claims."); *Arkema Inc. v. Anderson Roofing Co., Inc.*, 719 F. Supp. 2d 1318, 1327 (D. Or. 2010) (holding that state law claims "rely on the same allegations as the CERCLA claims against those defendants. A dismissal of the state law claims would waste judicial resources and inconvenience the parties.").

## II. FOR ALL OF THESE REASONS, I WILL GRANT THE CITY'S MOTION AND I WILL MAINTAIN SUPPLEMENTAL JURISDICTION OVER THE STATE-LAW CLAIMS.

GP's motion to amend argues that "[a]s discovery has progressed, GP has determined that all of the costs it will seek at trial will be recoverable under CERCLA." Dkt. No. 164 at 3. As a result, GP moves to dismiss without prejudice its state-law claims against the City for declaratory relief under state law, implied equitable indemnity, nuisance, and trespass as part of its request that I not maintain supplemental jurisdiction over the City's claims against it. Of course, I would consider GP's motion to dismiss its own claims with prejudice, but for the reasons just given I will allow the City's proposed amendment and retain supplemental jurisdiction. Accordingly, I will DENY GP's motion to amend.

### CONCLUSION

For the reasons above, GP's Motion for Leave to Amend its Second Amended Complaint and Motion for Dismissal is DENIED and the City's Motion to Amend its Answer and Counterclaims is GRANTED. The City shall file its Amended Answer and Counterclaims by June 25, 2014.

**IT IS SO ORDERED**.

Dated: June 23, 2014



WILLIAM H. ORRICK
United States District Judge

13