**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| GEORGIA-PACIFIC LLC, | No. C 12-02797 WHO (LB) |
| Plaintiff, | **ORDER REGARDING THE PARTIES' DISCOVERY DISPUTE LETTERS DATED MAY 30, 2014, JUNE 2, 2014, JUNE 3, 2014, JUNE 4, 2014, AND JUNE 18, 2014** |
| v. | |
| OFFICEMAX INC, et al., | |
| Defendants. | [Re: ECF Nos. 176, 177, 178, 179, 180, 190] |
| _____/ | |

**INTRODUCTION**

Georgia-Pacific LLC ("GP") sued OfficeMax Incorporated ("OfficeMax"), Louisiana-Pacific Corporation ("Louisiana-Pacific"), and the City of Fort Bragg ("City"), seeking damages, indemnification, contribution, and declaratory relief under state and federal law for the alleged contamination of a lumber mill site at 90 West Redwood Avenue, Fort Bragg, California (the "Site"). Defendants have filed counter- and cross-claims against each other and Georgia-Pacific. Judge Orrick, who is presiding over this action, referred all discovery disputes to the undersigned for resolution.

On May 30, 2014, GP, along with OfficeMax and the City (collectively, "Defendants"), filed two joint discovery dispute letters regarding GP's assertion of the attorney-client privilege over certain documents. First 5/30/2014 Letter, ECF No. 176; Second 5/30/2014 Letter, ECF No. 177. Over the next few days, GP and Defendants filed three letters regarding Defendants' attachment of an

1  unredacted document to the Second 5/30/2014 Letter.  6/2/2014 Letter, ECF No. 178; 6/3/2014

2  Letter, ECF No. 179; 6/4/2014 Letter, ECF No. 180.  And June 18, 2013 Defendants filed another

3  letter asking the court to allow it to file additional evidence in support of the two joint letters filed on

4  May 30, 2014.  6/18/2014 Letter, ECF No. 190.  Upon consideration of the letters and evidence

5  submitted, the arguments of counsel at the June 26, 2014 telephonic hearing, and the applicable

6  authority, the court rules as follows.

**ANALYSIS**

**I. LEGAL STANDARD**

"[A] party asserting the attorney-client privilege has the burden of establishing the [existence of an attorney-client] relationship and the privileged nature of the communication." *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (quoting *United States v. Bauer*, 132 F.3d 504, 507 (9th Cir. 1997)).  "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed."  *Id.* (quoting *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002)).  An eight-part test determines whether information is covered by the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*Id.* (quoting *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 n.2 (9th Cir. 1992)).  "The party asserting the privilege bears the burden of proving each essential element."  *Id.* at 608 (citing *United States v. Munoz*, 233 F.3d 1117, 1128 (9th Cir.2000), *superseded on other grounds as stated in United States v. Van Alstyne*, 584 F.3d 803, 817 (9th Cir. 2009)).

**II. DISCUSSION**

**A. The Document That Is Bates-Stamped AME00014305-08 Is Not Protected by the Attorney-Client Privilege and GP May Not Claw It Back for this Reason**

In the Second 5/30/2014 Letter, GP seeks to clawback a document that is Bates-stamped AME00014305-08 on the ground that portions of it are protected by the attorney-client privilege. The document is a thread of emails sent and received from August 19, 2005 to August 21, 2005 that discuss GP's possible response to a letter that environment activist Carey Knecht sent to the

1 Regional Water Quality Control Board critiquing GP's plans for remediating the Site (the "Knecht
2 Letter").

3     The context of the emails is summarized as follows. On August 19, 2014, GP's environmental
4 consultant, Acton Mickelson Environmental ("AME") prepared a draft response to the Knecht Letter
5 and sent it to, among others, GP's directors of real estate, Carol Stephens and Julie Raming, and
6 GP's in-house counsel, Michael Davis. Mr. Davis and Ms. Raming then proceed to discuss various
7 way to characterize what is done at the Site.

8     GP apparently inadvertently produced this email chain to Defendants, and now it wants to claw it
9 back because it is protected by the attorney-client privilege. In its privilege log, GP identifies both
10 Ms. Stephens and Mr. Davis as "in-house counsel" and argues that their presence in the email
11 conversation means that the email chain is privileged. But as the Ninth Circuit has explained:

> That a person is a lawyer does not, *ipso facto*, make all communications with that person privileged. The privilege applies only when legal advice is sought "from a professional legal advisor in his capacity as such." [8 John H. Wigmore, *Evidence*] § 2292 at 554 (emphasis added). For example, where a counterfeiter hired a man who was a lawyer to buy printing equipment for him, no privilege could be asserted because the lawyer was merely a "business agent" and not a "legal advisor." *United States v. Huberts*, 637 F.2d 630, 640 (9th Cir. 1980). Likewise, lawyer-client communications were not privileged where the "clients did not approach him for legal advice and assistance, but rather with the aim of finding [investment opportunities]." *Liew v. Breen*, 640 F.2d 1046, 1050 (9th Cir. 1981). A lawyer's account ledgers revealing a client's financial transactions with third parties, which did not reveal the client's communications with the lawyer, or the lawyer's advice, were not privileged. *In re Fischel*, 557 F.2d 209, 212 (9th Cir. 1977).
>
> If a person hires a lawyer for advice, there is a rebuttable presumption that the lawyer is hired "as such" to give "legal advice," whether the subject of the advice is criminal or civil, business, tort, domestic relations, or anything else. But the presumption is rebutted when the facts show that the lawyer was "employed without reference to his knowledge and discretion in the law":
>
>> A lawyer is sometimes employed without reference to his knowledge and discretion in the law—as where he is charged with finding a profitable investment for trust funds. So, too, one not a lawyer is sometimes asked for legal advice—as where a policeman or a clerk of court is consulted. It is not easy to frame a definite test for distinguishing *legal from nonlegal advice*. Where the general purpose concerns legal rights and obligations, a particular incidental transaction would receive protection, though in itself it were merely commercial in nature—as where the financial condition of a shareholder is discussed in the course of a proceeding to enforce a claim against a corporation. But apart from such cases the most that can be said by way of generalization is that a matter committed to a professional legal adviser *is prima facie so committed for the sake of the legal advice* which may be more or less desirable for some aspect

> of the matter, and is therefore within the privilege unless it clearly appears to be lacking in aspects requiring legal advice.

8 Wigmore, *supra*, § 2296, at 566-67 (emphasis in original). Calling the lawyer's advice "legal" or "business" advice does not help in reaching a conclusion; it is the conclusion. That the lawyers were "involved in business decision-making," as the government puts it, is irrelevant. What matters is whether the lawyer was employed with or without "reference to his knowledge and discretion in the law," *id.*, to give the advice.

*United States v. Chen*, 99 F.3d 1495, 1501-02 (9th Cir. 1996).

So, the question is: Was Ms. Stephens or Mr. Davis acting with reference to his or her knowledge and discretion in the law? In a previous discovery dispute, the court briefly addressed GP's assertions of privilege with respect to Ms. Stephens and Mr. Davis:

> On April 7, 2014, GP and the City filed a letter describing a dispute about GP's withholding of certain documents as protected by the attorney-client privilege. Specifically, GP has withheld a certain number of emails because they were between one of GP's three outside consultants and one of GP's two in-house attorneys. The City says that one of the attorneys, Carol Stephens, already testified that she never acted for GP in her capacity as an attorney; instead, she worked as GP's director of real estate at all relevant times. The City also says that GP's other attorney, Mr. Davis, testified that he was not involved with the mill site until late 2005 or early 2006 and that he was only ever copied on emails to or from the outside consultants so that he would kept in the loop, so to speak. The City also argues that GP nevertheless has waived the privilege, as it has already produced numerous emails between the consultants and these two attorneys. GP does not appear to challenge the City's arguments but instead says that it wants the court to conduct an in camera review of the withheld documents at issue in this letter and all future letters (which GP suggests are forthcoming).
> 
> On this record, it appears that Ms. Stephens's emails are not privileged or work product. The court discussed its privilege review procedures and the need for the parties to do their work before raising disputes like this or suggesting in camera review.

4/17/2014 Order, ECF No. 162 at 7. In other words, the court found that Ms. Stephens, based on her own testimony, did not act as an attorney for GP, so her presence would privilege communications to and from her.

In the current letter, GP argues that the court should ignore Ms. Stephens's "general testimony" because "there still were specific occasions when they were expected to render legal advice and make legal judgments to protect the Company's interest in complying with applicable laws and avoiding potential litigation." Second 5/30/2014 Letter, ECF No. 177 at 5. GP cites to no evidence to support this position, and in fact Ms. Stephens's testimony on her work was unequivocal. She

repeatedly testified that, with respect to the GP's dealings with the Site, she did not wear her "lawyer hat" and instead her role was limited her non-legal position as senior director of real estate. *See* First 5/30/2014 Letter, Ex. 4, ECF No. 176 at 27, 31-32 (excerpts of Ms. Stephens's deposition testimony). She testified that this was so because her legal experience was related to Native American law and administrative law, not environmental law. *See id.* at 33. On this record, the court again finds that Ms. Stephens did not act as an attorney with respect to GP's dealings with the Site and therefore her presence in the email conversation does not support GP's assertion of the attorney-client privilege.

The court did not, however, make a finding in its previous order about whether Mr. Davis was acting with reference to his or her knowledge and discretion in the law, and the answer is not obvious. On one hand, Mr. Davis has testified that he started participating in the Site's remediation in middle of 2005 when he was asked to "take a look at the [S]ite and assist [GP's real estate group] in terms of developing a path forward because [the real estate group was] getting a lot of resistance from the local community [about GP's] prior efforts to try and evaluate the [S]ite in terms of its environmental conditions." 4/7/2014 Letter, Ex. C, ECF No. 156 at 32 (excepts of Mr. Davis's deposition testimony). He elaborated:

> I was called in, like I said, because [GP's real estate group] were having—they were not making progress with the local water board[,] who was at that point the agency managing the investigation of the [S]ite.
>
> Part of that was due to a fair amount of local resistance to the actions that were being taken by the water board. They didn't feel the water board was being stringent enough. Part of it was a concern that, that the, I really don't know how to describe it, other than there was disgruntlement between the community both, I think, between [GP] and the water board that was impeding progress on the [S]ite in terms of moving the remdiation forward.
>
> So I was brought in to assist, to see if there were things that could be done to get the remediation back on track or the investigation back on track at that point.

*Id.* at 33. On the other hand, Mr. Davis's comments in the email chain at issue here do not appear to involve "reference to his knowledge and discretion in the law." The portions of the email chain that GP says are privileged involve Mr. Davis's opinion that GP should make some "generic statements concerning past operations at the mill" at the Site to counter the "misinformation that is floating around." Second 5/30/2014 Letter, Ex. A, ECF No. 177 at 11.

1    At the hearing, GP said that Mr. Davis always operated as GP's environmental counsel and one
2 has to consider that context in evaluating his email here.  GP says (without citing a declaration from
3 Mr. Davis) that Mr. Davis was reacting to a letter from a citizen's group with the interest and
4 potential to file a lawsuit, and his job was to make sure that information was reported in a matter that
5 minimized the likelihood of that suit.  Defendants responded that the record (including the email
6 itself and Mr. Davis's deposition testimony) does not support that conclusion, and it is GP's burden
7 to establish privilege.

8    On this record, Mr. Davis's comments reflect no legal analysis, do not provide legal advice, and
9 do not appear to have been made in response to a legal problem.  Instead, his comments suggest a
10 particular action to be made regarding GP's public relations strategy to soften the blow from the
11 Knecht Letter.  Such comments, in this context, do not trigger the protections of the attorney-client
12 privilege.  While Mr. Davis may have provided legal advice to GP or assisted GP with "reference to
13 his knowledge and discretion in the law" at other times, the court finds that he did not so in his
14 emails found in the document Bates-stamped AME00014305-08.

15    Accordingly, the court finds that the document Bates-stamped AME00014305-08 is not
16 protected by the attorney-client privilege and thus may not be clawed back by GP.  And because the
17 court finds that the attorney-client privilege does not apply to this particular document, the court
18 does not address Defendants' argument that GP waived the privilege due to the presence of GP's
19 environmental consultant on the emails.

20    In addition, because the court finds that the document Bates-stamped AME00014305-08 is not
21 protected by the attorney-client privilege, the issue about whether it should have been filed under
22 seal is now moot.  Thus, the court **DENIES** GP's June 2, 2014 Letter requesting that the document
23 be sealed.  *See* 6/2/2014 Letter, ECF No. 178; *see also* 6/3/2014 Letter, ECF No. 179; 6/4/2014
24 Letter, ECF No. 180.  That said, although the court has ruled that, under the stipulated protective
25 order that governs the inadvertent productions of privileged materials, *see* Protective Order, ECF
26 No. 79, the party receiving an inadvertently produced document can retain the document "for use in
27 resolving the dispute" over its protected status, if in the future the parties dispute whether an
28 inadvertently produced document is protected, the parties should ask the court for permission to file

the discovery dispute letter (or portions thereof) under seal before simply filing it in the public record.

**B. The Parties Shall Meet and Confer Further About the Remaining Potentially-Privileged Documents**

In the First 5/30/2014 Letter, Defendants challenge GP's assertion of the attorney-client privilege with respect to 64 documents. *See* First 5/30/2014 Letter, Ex. 1, ECF No. 176 at 9-19 (GP's privilege log). Defendants make several arguments, each of which is address below.

First, Defendants argue that some of the documents are not protected because GP's assertion of the privilege over those documents is based only on Ms. Stephens's presence. To the extent that this is the sole basis for GP's assertion of the privilege, the court finds that those documents are not privileged because, as explained above, Ms. Stephens did not act as an attorney with respect to GP's dealings with the Site.

Second, Defendants argue that other documents are not protected because GP's environmental consultant, AME, an outside party, was included in the communications. GP maintains that the presence of an outside consultant does not necessarily destroy the privilege. This is true, *see United States v. Graf*, 610 F.3d 1148, 1158-59 (9th Cir. 2010), but the court does not believe that the parties sufficiently explored this issue. The Ninth Circuit has adopted the Eighth Circuit's rule that the privilege may attach to an outside consultant when that outside consultant is in all relevant respects the functional equivalent of an employee of the attorney's corporate client. *See id.* (citing *In re Bieter Co.*, 16 F.3d 929, 937-38 (8th Cir. 1994)). Although the parties cited *Graf* and argued that AME was, or was not, a functional equivalent of a GP employee, they provide little substance (and even less evidence) to support their assertions. *See* First 5/30/2014 Letter, ECF No. 176 at 2-3 (three very short paragraphs by Defendants), 5-6 (one paragraph by GP, in which two of the three opinions cited discuss the attorney work product doctrine rather than the attorney-client privilege). Simply put, the parties have not provided the court with enough information about AME's relationship with GP for the court to determine whether AME indeed was the functional equivalent of a GP employee. In the few opinions by district courts within this Circuit that have analyzed this issue (none of which was cited by the parties), the courts were provided with much more detail in

this regard. *See Philips v. C.R. Bard, Inc.*, No. 3:12–cv–00344–RCJ–WGC, 290 F.R.D. 615, 632-33 (D. Nev. Mar. 29, 2013); *In re High-Tech Employee Antitrust Litig.*, No. 11–CV–2509–LHK–PSG, 2013 WL 772668, at *2-5 (N.D. Cal. Feb. 28, 2013); *Gen-Probe Inc. v. Becton, Dickinson and Co.*, Civil Nos. 09cv2319 BEN (NLS), 10cv0602 BEN (NLS), 2012 WL 1155709, at *2-5 (S.D. Cal. Apr. 6, 2012); *United States ex rel. Strom v. Scios, Inc.*, No. C05–3004 CRB (JSC), 2011 WL 4831193, at *2-4 (N.D. Cal. Oct. 12, 2011).

Third, Defendants argue that still other documents simply contain no legal advice. As can be seen from the eight-factor legal standard cited above, however, protected communications are not limited only to those providing legal advice. *See Ruehle*, 583 F.3d at 607. Rather, communications relating to the provision of legal advice also may be protected, provided the other factors also are satisfied. *See id.*

Accordingly, the court **DENIES WITHOUT PREJUDICE** the First 5/30/201 Letter and **ORDERS** the parties to meet and confer further about this dispute. When doing so, the parties shall keep in mind the Ninth Circuit's eight-factor legal standard for applying the attorney-client privilege, the court's reasoning and ruling with respect to the document Bates-stamped AME00014305-08, the court's finding regarding Ms. Stephens's status as a non-attorney with respect to her work on the Site, and the applicable authority regarding the Ninth Circuit's opinion in *Graf*. If the parties still are unable to resolve their dispute, they may file another joint discovery letter. If they do so, they shall support their arguments about the application of *Graf* with sufficient evidence to allow the court to make the necessary finding. To streamline this process, the court directs GP to provide its arguments and evidence to Defendants by Tuesday, July 8, 2014, and directs to Defendants to provide its arguments and evidence in response to GP by Monday, July 14, 2014. If the dispute remains, they may file a joint letter on Tuesday, July 15, 2014. In light of this procedure, the court **DENIES AS MOOT** Defendants' June 18, 2014 Letter.

## CONCLUSION

Based on the foregoing, the court finds that the document Bates-stamped AME00014305-08 is not protected by the attorney-client privilege and thus may not be clawed back by GP. The court thus denies GP's request to claw it back in ECF No. 177. This moots the issue of whether it should

be filed under seal, which means that the court denies as moot the letter briefs at ECF No. 178, 179, and 180.  The court orders the parties to meet and confer further about GP's assertions of the attorney-client privilege, while keeping this order in mind, and to file a joint letter brief if they cannot resolve their dispute.  (Again, GP needs to provide a basis – beyond someone's job as a lawyer – that communications are privileged.)  The court thus denies without prejudice the discovery dispute raised in ECF No. 176.  The court also denies as moot the request to file the transcript of Mr. Acton when it becomes available.  *See* ECF No. 190.

This disposes of ECF Nos. 176, 177, 178, 179, 180, and 190.

**IT IS SO ORDERED.**

Dated: June 30, 2014

_____
LAUREL BEELER
United States Magistrate Judge