

www.behblaw.com

500 WASHINGTON STREET, SUITE 700                                    333 S. HOPE STREET, 35TH FLOOR
SAN FRANCISCO, CA 94111                                                    LOS ANGELES, CA 90071
TEL 415-397-9006                                                                       TEL 213-412-2661
FAX 415-397-1339                                                                     FAX 213-652-1992

MAIN OFFICE

August 21, 2014

*Via E-File*
Hon. Laurel Beeler
United States District Court
Northern District of California
450 Golden Gate Avenue
San Francisco, California 94102

>      Re:   ***Georgia-Pacific, LLC v. OfficeMax Incorporated, Louisiana-Pacific***
>      ***Corporation, And The City Of Fort Bragg***
>      United States District Court Northern District Case No. 3:12-cv-02797-WHO
>      Our Client:   The City of Fort Bragg

Dear Magistrate Beeler:

The City of Fort Bragg ("City") and Georgia-Pacific LLC ("GP"), after meeting and conferring by phone[1], submit the following Joint Discovery Letter Brief regarding the parties' dispute as to GP's responses to the City's Requests for Production, Set Two ("the RFPs") (Exh. 1), pursuant to the August 14, 2014 Standing Order:

## I.   PRIVILEGE LOG AND FAILURE TO PRODUCE DOCUMENTS.

**THE CITY'S POSITION:**   In nearly every one of GP's responses to the RFPs, GP states that it will produce or "make available on a rolling basis" documents responsive to the RFPs that are "in its custody, possession, or control."  (Exh. 1.)  To date, GP has not produced any of the documents that were requested, nor any privilege log for materials that were withheld as privileged.[2]  According to the Standing Order, if GP withheld any material as privileged, GP was to produce a privilege log "as quickly as possible, but no later than fourteen days after its [] discovery responses are due."  (Dkt # 131-1, ¶ 2.)

---

[1] The parties could not confer in person because counsel for GP do not live in the Bay Area.

[2] In a letter initiating the meet and confer process, the City requested that GP produce or make available the responsive documents by 5:00 p.m. on August 1, 2014.  (Le Decl., ¶ 3, Exh. 1 at 5.)  Thereafter, the parties met and conferred by phone on August 4, during which counsel for GP indicated that it was satisfied with its responses as provided and therefore would not revise or supplement any of its responses.  (Le Decl., ¶ 4.)

942390

Magistrate Beeler
August 21, 2014
Page 2

GP's responses were due on June 23, 2014.  Because GP has failed to produce any privilege log for any documents that have been withheld from the RFPs, any claims of privilege or protection over such documents are waived, and GP must therefore produce the requested documents immediately.

**GP's RESPONSE:**  In Defendants' continuing effort to burden the Court with every conceivable discovery complaint no matter how trivial or manufactured, the City of Fort Bragg ("CFB") seeks to compel additional responses to its second set of requests for production of documents.  Indeed, CFB's "Statement Regarding the Dispute" contains demonstrably false and misleading statements in connection with Georgia-Pacific's privilege log and alleged "failure to produce documents."  In addition, nearly all these RFPs seek to expand this case far beyond the Fort Bragg Mill Site to *every* facility owned or operated by Georgia-Pacific between 1970 and 2002.  Finally, review of CFB's remaining individual complaints reveals that they are utterly without merit.  The Court should deny CFB's unfounded motion.

CFB states that "[t]o date, Georgia-Pacific has not produced any of the documents that were requested, nor any privilege log for materials that were withheld as privileged."  *See* Ex. A at 1-2 & n.2.  This statement is false for three reasons: (a) Georgia-Pacific specifically identified in its written responses certain documents that had *previously* been produced in response to the requests (*see, e.g.,* Response to RFP No. 66 listing eight documents comprising over 2000 pages); (b) as a result of the meet and confer process, Georgia-Pacific agreed to and did provide additional documents that were responsive to the requests[3]; and (c) Georgia-Pacific had *already* produced its final privilege log and confirmed with opposing counsel that the log was final.  In addition, CFB's statement is misleading because it fails to mention that Georgia-Pacific had expressly objected on grounds that it had already produced tens of thousands of fully-searchable documents that might be responsive.  To require Georgia-Pacific to re-review all those documents is unduly burdensome and oppressive, when CFB could just as easily review them for the documents it seeks.  *See, e.g.*, *Vietnam Veterans of Am. v. C.I.A.*, 09-CV-0037 CW JSC, 2011 WL 4635139 (N.D. Cal. Oct. 5, 2011).

**THE CITY'S REPLY:** GP's Code of Conduct, produced on August 11, the same day the City submitted its 2.5 pages to GP, is the only document that GP produced after the RFPs were served.  GP's Response to No. 26 (which cites several unrelated documents that were previously produced as "potentially responsive and/or relevant") is representative of GP's responses to most of the other RFPs.  The fact that GP was able to produce the Code, albeit nearly 2 months after its responses were due, shows that GP was, and still is, improperly withholding documents responsive to the RFPs.

## II.   RFP NOS. 30, 31, 32, 34, 37, 40, 41, 42, 43.

**THE CITY'S POSITION:**  These requests bear upon the issue of GP's knowledge regarding environmental or human health dangers posed by dioxins, and seek documents relating to

---

[3] Counsel for Georgia-Pacific had advised counsel for CFB that it would produce those specific documents (Georgia-Pacific Codes of Conduct), and the documents were produced before Ms. Le sent her letter brief insert.  Johnson Decl. ¶ 3.

Magistrate Beeler
August 21, 2014
Page 3

GP's remediation of dioxin contamination at any of its other facilities.  Dioxins are extremely dangerous chemicals and are a major contaminant at the Mill Site.  GP refused to produce documents relating to dioxin contamination at any of its other facilities, arguing that the information is not relevant or reasonably calculated to lead to the discovery of admissible evidence. (Exh. 1 at Nos. 30, 31, 32, 34, 37, 40, 41, 42, 43.) The documents are relevant, however, to several issues contained in the City's defenses and counterclaims against GP, including those for fraud and misrepresentation.

The Court recently allowed the City to amend its counter claim and answer to allege that GP fraudulently concealed the dioxin contamination.  A partial basis for the ruling was that GP's fraudulent concealment was also relevant to the defense of GP's CERCLA claim.[4]  GP did not begin to investigate dioxins at the Mill Site until late 2005, several years after the facility closed.  Even when dioxins were discovered, GP failed to report the findings to regulators for six months and instructed their consultant not to report the findings. (Le Decl., ¶ 6, Exh. 3 at 27:18-28:23, 30:20-24, and 31:14-21.)  GP's motives for concealing the dioxin contamination stem from prior lawsuits filed against GP, along with GP's experience at its other facilities, which taught GP that dioxin contamination raises serious regulatory and public relations ("PR") problems that complicate remediation and sales of contaminated property.  GP attempted to sidestep these complications in remediating the Mill Site by ignoring the dioxin issue.

The requested documents affect GP's claims against the City for costs, which are allocated under CERCLA Section 113.  One of the equitable factors courts commonly consider in determining CERCLA cost allocations is the degree of cooperation by the parties with federal, state, or local officials to prevent any harm to public health or to the environment.  The requested documents would show that GP knew prior to its testing and reporting of the dioxin results that its operations were generating high levels of dioxins; that GP therefore had a duty to investigate the Site for dioxins; that GP failed to investigate the Site for dioxins in order to conceal, from City officials and other government officials, the true nature and extent of the dioxin contamination on the Site; and that GP should therefore be allocated the bulk of the response costs.  Given the significance of the requested information to this litigation, let alone its relevancy to the aforementioned issues, GP must produce the documents as requested in RFP Nos. 30, 31, 32, 34, 37, 40, 41, 42, 43.

**GP'S RESPONSE:**  In all but four of the requests at issue, CFB is seeking documents from other Georgia-Pacific facilities unrelated to the Fort Bragg Mill.  *See, e.g.,* Exh. 1, RFP Nos. 30, 31, 32, 34, 37, 40, 41, 42, 43, and 71.  For instance, RFP No. 32 is breathtakingly overbroad.  It requests "[a]ll communications between you and any agency, from 1970 to 2002, regarding environmental or human health dangers posed by any dioxins that came from any of your operations at any lumber, paper, pulp, or other mill site."  Likewise, RFP No. 71 seeks "[a]ll environmental alerts, from 1990 to 2002, relating to any chemical concern at the Mill Site, sent by your environmental department to any of your facilities."  Others are equally expansive.

---

[4] The Court's Order is attached as Ex. 2 to the Le Decl.

Magistrate Beeler
August 21, 2014
Page 4

Georgia-Pacific properly objected to all of these requests on grounds they are unrelated to operations at the Mill Site, are overly broad, and are unduly burdensome. Collecting and producing the requested documents would potentially require conducting searches and interviews at hundreds of facilities all over the world. *Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*, 981 F.2d 429, 439 (9th Cir. 1992) (overbreadth); *Sorosky v. Burroughs Corp.*, 826 F.2d 794, 805 (9th Cir. 1987) (same). Not only would the expense and resources to collect and produce such documents be astonishing, but their relevance to this case would be negligible at best.[5] To the extent that Georgia-Pacific has located responsive, non-privileged documents pertaining to the Fort Bragg Mill Site, those documents have been produced. They are the documents that are relevant to the disposition of this case.[6] In fact, while CFB claims that documents from other facilities are needed to establish Georgia-Pacific's general awareness of dioxins and potential health impacts, Georgia-Pacific has *already* acknowledged that point. *See* Le Decl., Ex. 4 at 395-99.

Finally, even if documents were produced from a facility unrelated to Fort Bragg (*e.g.*, from a Gypsum Wallboard facility in Texas), the trial of this case would become an evidentiary quagmire. Instead of focusing on the allocation of liabilities for the Fort Bragg cleanup, the parties would end up litigating the (dis)similarity of facilities, their applicable regulations, and the like. The Court should deny CFB's motion to compel on these overly broad and burdensome requests that will produce nothing of value in the case.

### III.   RFP NOS. Nos. 65, 66, 67

**THE CITY'S POSITION:**  RFP Nos. 65, 66, and 67 seek documents relating to GP's "beneficial reuse" program and analyses that GP's corporate witness, Roger Hilarides, referenced during GP's 30(b)(6) deposition. This Court, in a previous motion, found the matter relevant when it ordered a further FRCP 30(b)(6) deposition so that the City could further inquire about the issue. (Dkt. #162 at 4.) Despite the evidence that such documents exist and are in GP's control[7], and numerous requests from Defendants throughout the discovery process, GP has yet to produce any documents relating to the beneficial reuse program, or identify any such documents in a privilege log.

"Beneficial reuse" refers to GP's practice of repurposing the ash, or other byproducts, generated from lumber mill operations for various uses, such as for soil amendment. Before the material could be reused, GP was required to follow certain rules and procedures set forth by GP's beneficial reuse program, which was in place as early as the

---

[5] Given Defendants' stated desire for an extension of the discovery cutoff, it is not surprising that CFB is attempting to require Georgia-Pacific to conduct a time consuming, worldwide search for documents of, at best, dubious relevance.

[6] CFB makes a number of scurrilous accusations about dioxin and Georgia-Pacific's "motives" with no factual basis whatsoever. Not surprisingly, CFB provides no citations to any evidence even though CFB has taken the depositions of the individuals involved. Indeed, CFB's own 30(b)(6) designee on this issue, Linda Ruffing, could not point to any evidence when asked to cite it during CFB's deposition two days *after* CFB's counsel served its insert for this letter brief.

[7] Hilarides testified at GP's 30(b)(6) deposition these documents were created when the Mill was operational prior to 2002. (Le Decl., Ex. 4 at 416:2-24.)

Magistrate Beeler
August 21, 2014
Page 5

mid-1990s.  The program involved conducting a "beneficial reuse analysis," which according to Hilarides, is an "analysis of what the material is…and identification of potential risks associated with what's in the material and how it's being proposed to be used."  (Ex. B to Johnson Decl. at 19:6-18.)  In response to RFP Nos. 65 and 66, GP lists several documents by bates range, none of which are related to the beneficial reuse program.  (Le Decl., ¶ 2.)  In response to RFP No. 67, which asks for documents relating to the dioxin concentrations of the fly ash collected for beneficial reuse, GP claims that it could not identify *any* such documents after performing "diligent search."  Hilarides testified unequivocally that "there was regular testing" of GP's fly ash for dioxins for beneficial reuse, and that he reviewed a number of documents pertaining to GP's regular testing of the ash.  (Le Decl., Exh. 4 at 416:9-24.)  Based on GP's 30(b)(6) testimony, the only viable conclusion is that GP either did not actually conduct a diligent search, or is improperly withholding documents.  The City therefore moves to compel the production of all documents responsive to these requests.

**GP'S RESPONSE:**  CFB's other complaints likewise demonstrate how it is distorting the record to fabricate discovery "disputes."  Citing only testimony from Mr. Hilarides's April deposition (Le Decl. Ex. 4 at 416), CFB asserts that Georgia-Pacific has failed to produce documents about a "beneficial reuse program."  *See* RFP Nos. 65, 66, 67.  CFB conveniently omits Mr. Hilarides' testimony at his follow-up deposition in July, where he flatly refuted CFB's claim:

> (By Mr. Blum)  Well, let me -- did the [beneficial use] program apply to Fort Bragg?
> A.  In this case, the analysis had already been done previously, and so they were not required to fulfill the beneficial use process that we had in place at the time.  *So no, it didn't apply*.

Hilarides Dep. (July 29, 2014) at 22 (attached as Ex. B to Johnson Decl.) (emphasis added); *see also id.* at 6-51, 124 (detailed discussion of beneficial reuse program that did not apply to Fort Bragg).  As is clear from Mr. Hilarides' later testimony, CFB is misreading his April testimony.

With the "beneficial use" program in proper context, it is clear Georgia-Pacific responded appropriately to the requests.  In response to RFP Nos. 65 and 66, Georgia-Pacific objected to the extent that the requests might be seeking documents already produced in the case about any testing of ash that had been performed.  *See* Johnson Decl. ¶ 3.  Moreover, Georgia-Pacific identified specific documents by bates number that were potentially responsive because of their relevance to dioxins.  *Id.*  And, as noted above, Georgia-Pacific had produced the documents in searchable form.  CFB can conduct its own searches of the previously-produced documents to identify any documents it seeks.  As for RFP No. 67, Georgia-Pacific conducted a reasonably diligent search (including the documents already produced) and did not identify any documents specifically responsive to the request – not surprising given that the program did not apply to the Fort Bragg Mill.

**THE CITY'S REPLY:** RFP 65 is not restricted to Fort Bragg and encompasses documents such as those setting forth the requirements and procedure for conducting the beneficial

Magistrate Beeler
August 21, 2014
Page 6

reuse analysis.  Hilarides testified at his follow-up deposition in July that he "reviewed lots of documents associated with that whole time period [mid to late '80s into the '90s] and worked to beneficially reuse the ash at Little Valley and McGuire's Ranch and other places," (Ex. B to Johnson Decl. at 32:8-11.) which would be responsive to RFA 67.  Furthermore, GP's response to RFA 66 indicates that there are documents to be produced since GP says that it "will continue to produce or make available on a rolling basis" responsive documents.

## IV.    RFP NOS. 71, 72

**THE CITY'S POSITION:** RFP Nos. 71 and 72 seek production of the "environmental alerts" referenced by Hilarides during GP's 30(b)(6) deposition.  GP claims that it could not identify any such documents, contrary to testimony given by GP's own corporate witness.  Hilarides testified that GP "used to have, and still do, what we call an environmental alert," which are memoranda that would have been sent from GP's environmental office "to appropriate facilities" when there was a significant learning as to an environmental risk that needed to be broadly communicated. (Le Decl., Exh. 4 at 580:9-22.)  The City therefore requested all such environmental alerts that may have been sent by GP's environmental department to any of GP's facilities or any person who had responsibility at the Site.  The evidence indicates that GP did not actually conduct a diligent search, or that GP is improperly withholding documents.  GP must conduct an actual diligent search pursuant to the Rules and produce the requested documents or explain why it cannot.

**GP's RESPONSE:**  For RFP Nos. 71 and 72, once again CFB seeks documents that Georgia-Pacific could not locate after a diligent search, including a search of documents that had previously been produced.  Responsive "environmental alerts" were not found pertaining to the Fort Bragg Mill.  CFB alleges that Mr. Hilarides' testimony indicates that responsive documents should exist, but his actual testimony is quite the opposite.  He testified that, while it was possible such an alert could have been created had someone identified a risk, he didn't recall ever seeing any such alert.  *See* Le Decl., Ex. 4 at 580.  There is no basis whatsoever for CFB to charge Georgia-Pacific with failing to conduct a diligent search or withholding responsive documents.**.**

## V.    REQUESTS FOR COSTS.

**GP's RESPONSE:**  Georgia-Pacific requests its reasonable fees and costs under Rule 37(a)(5)(B) for defending against CFB's motion, which is not substantially justified.

**THE CITY'S REPLY:**  The City has had to bring many motions throughout the discovery process due to GP's inappropriate conduct which hinders the City's ability to discover the information necessary for its defense against GP's $38 million claim.  GP dismisses these issues as "trivial" because GP can afford to.  The City, on the other hand, cannot continue to engage in GP's games, not only because they are expensive and burdensome, but also because discovery cut-off is a month away.  Even so, the City has until now refrained from asking for costs to avoid additional discord.  The City is still reluctant to do so, but because GP is seeking costs, the City feels that it has no choice but to do the same.

Magistrate Beeler
August 21, 2014
Page 7

---

Respectfully submitted,


*/s/ Fred M. Blum*                         */s/ Harry M. Johnson*
Fred M. Blum of                            Harry M. Johnson of
BASSI EDLIN HUIE & BLUM, LLP               HUNTON & WILLIAMS LLP


Encl:  Exhibits
cc:         Counsel of Record

**Re**:   **Georgia-Pacific, LLC v. OfficeMax Incorporated, Louisiana-Pacific Corporation, And The City Of Fort Bragg**
**United States District Court, Northern District Case No. 3:12-cv-02797-WHO**

### PROOF OF SERVICE – ELECTRONIC TRANSMISSION

STATE OF CALIFORNIA/COUNTY OF San Francisco

I am a citizen of the United States and an employee in the County of San Francisco. I am over the age of eighteen (18) years and not a party to the within action. My business address is BASSI, EDLIN, HUIE & BLUM LLP, 500 Washington Street, Suite 700, San Francisco, California 94111.

On the date executed below, I electronically served the document(s) via ECF Northern District website*s*, described below, on the recipients designated on the Transaction Receipt located on the ECF Northern District website.

**DEFENDANT THE CITY OF FORT BRAGG'S JOINT LETTER BRIEF RE GEORGIA-PACIFIC'S RESPONSES TO THE CITY'S REQUESTS FOR PRODUCTION, SET TWO**

On the following parties:

  PLEASE SEE SERVICE LIST PROVIDED BY ECF NORTHERN DISTRICT WEBSITE

I declare under penalty of perjury that the foregoing is true and correct and that this document is executed on August 21, 2014, at San Francisco, California.

/s/ ALISHA C. PEMBER

ALISHA C. PEMBER

949924

1

PROOF OF SERVICE