**30(b)(6) Deposition Preparation Notes**
*Former Fort Bragg Mill Site, Fort Bragg, CA*

<u>Subject 3</u>: *All evidence or other information that GP has regarding the location, scope and nature of the disposal of hazardous substances by Union Lumber, OfficeMax, LP and/or CFB at the former Fort Bragg lumber mill site.*

<u>Office Max</u>

- A chronology of events from 1969 to 1974 points to concerns by the RWQCB about the nature of Boise Cascade's discharges to the Pacific Ocean during its ownership period, including concerns about glue waste, debarker water, and boiler blow down water discharges.[1]

- Analytical data from 1971 points to contaminants in Boise Cascade's discharges, including acidic conditions, volatile solids, grease, and phenols.[2]

- The January 1973 Waste Discharge Technical report, prepared by Boise Cascade, includes data collected prior to GP's ownership period.  This data identified grease and oil, acidic conditions, and phenolic compounds in "Barker Settling Ponds Effluent" (p. 9 of 16).  Boiler water blow down water had a pH of 11 (p. 10 of 16).  Mill pond discharge water contained grease and oil, arsenic, and lead (p. 11 of 16).[3]

- Waste from plywood plant steam vats and glues were discharged to Pond 8 and to the Pacific Ocean during Office Max's ownership period.[4]

- Fly ash and clinkers generated from the wood fired boilers and wood burn areas at the site would have contained dioxins and metals.  A review of aerial photographs indicates that historically there were areas of land disturbance at the site, including the southern portion of the site (near the blow hole), southwest of Pond 8, along the southwest coastline, and along the north west coast, indicative of filling at the site during the period when Office Max predecessors were operating the plant.[5]

- Historical operations at the plant would have included the use of hazardous materials, including fuel oils, lubricating oils, solvents, leaded gasoline, and PCB oils in transformers.  Accidental discharges, spills, and/or releases of these materials would have occurred.

- Further details about this disposal of hazardous substances is being developed by experts retained by GP.

- Hazardous substances, pollutants, and contaminants would have been disposed of in connection with machine operations, lubrication, and cleaning, vehicle operation and maintenance, tool and equipment part manufacturing, and vehicle and railroad operations and maintenance.

<u>Louisiana Pacific</u>

- Analytical data from 1971 points to contaminants in plywood plant vat discharges that contain volatile solids, grease, and phenols.[6]  While this data is from the period before LP owned the plant, the operations were the same in 1971 as they were during LP's time period.

DEFENDANT'S EXHIBIT 157
PENGAD 800-631-6989

- The RWQCB Order Number 75-12 indicates that "The discharge of effluent waste resulting from the production of plywood to the waters of the Pacific Ocean or a waste stream which discharges to the Pacific Ocean is prohibited" and that LP had until March 1, 1976 to comply with this prohibition.[7] This discharge consisted of plywood block conditioning wastes, as described above, which discharged to the Mill Pond.[8]

- An April 1976 letter from the RWQCB to LP indicates that plywood vat liquors were continuing to be discharged to the mill pond in violation of the prohibition outlined in RWQCB Order Number 75-12.[9]

- Substances found in plywood plant discharges would have included dissolved and suspended solids, phenols, and acidic solutions.[10] In addition, glues used in the veneer and plywood industry include phenolic formaldehyde resin, urea formaldehyde, and protein glue, which would have contained solvents and caustic sodas.[11]

- LP's operations would have included the use of contaminants such as fuel oils, lubricating oils, solvents, leaded gasoline, and PCB oils in transformers. Accidental discharges, leaks spills, and/or releases of these materials would have occurred.

- The contaminant summary table prepared for OU-D identifies contaminants found in the areas owned and operated by LP, including Metals, PAHs, PCBs, TPH, Dioxins/ Furans, and VOCs.

- Further details about this disposal of hazardous substances is being developed by experts retained by GP.

- Hazardous substances, pollutants, and contaminants would have been disposed of in connection with machine operations, lubrication, and cleaning, vehicle operation and maintenance, tool and equipment part manufacturing, and vehicle and railroad operations and maintenance.

City of Fort Bragg

- The City of Fort Bragg dump was located in the Glass Beaches area of the site and was used for waste disposal sometime between circa 1942 and 1967.[12] The City dumps accepted municipal solid waste and other wastes such as appliances, automobile parts, etc. in these areas.[13] Some of this waste was burned in open pits on the bluffs prior to burial.[14]

- Storm water from the City flowed into Pond 5 until 2013. Pond 5 received City storm water that discharged into Pudding Creek and was pumped into Pond 5 until early 2013 when this practice was discontinued.[15] The City's storm water also drains directly into Pond 5 via surface flow.[16] This pond was historically used as a backup source of water to Pond 8.[17]

- Pond 8 receives storm water discharges from the City via two outfall pipes (from City drainage basins C and D)[18] that account for 54.5% of the drainage area into Pond 8.[19] Sampling of this storm water in 2011 revealed the presence of metals, petroleum products, and dioxins/furans.[20] Upon review of this data, the mass loading of dioxins/furans identified in storm water flowing into Pond 8 from the City accounted for 94% to 99% of mass contribution during the two storm events sampled in 2011.[21]

2

Similarly, drainage from the City accounted for 86% to 93% of the total metals loading to Pond 8 during the same two storm events in 2011.[22]

---

[1] RWQCB, Chronology of Events – Georgia-Pacific Sawmill, Ft. Bragg, August 25, 1969 – December 3, 1974.

[2] Letter from Ecklund, B.A. (Columbia Research and Testing Corporation) to Tallman, K. (Boise Cascade Corporation) Re: Analysis of Water Samples Collected from Mill Pond, September 13, 1971, October 6, 1971.

[3] Tallman, K., Technical Report – Sections I & II, Waste Discharge to the Pacific Ocean, Boise Cascade Corporation, Fort Bragg Plant Operation, January 15, 1973, pp. 9 – 11.

[4] US EPA, Surveillance & Analysis Division, Region IX, Industrial Discharge Survey, Boise Cascade Corp, Union Lumber Division, January 10, 1973, p.2-3; Letter from Ecklund, B.A. (Columbia Research and Testing Corporation) to Tallman, K. (Boise Cascade Corporation) Re: Analysis of Water Samples Collected from Mill Pond, September 13, 1971, October 6, 1971.

[5] Aerial Photography from 1948, 1956, 1957, 1963, 1970,

[6] Letter from Ecklund, B.A. (Columbia Research and Testing Corporation) to Tallman, K. (Boise Cascade Corporation) Re: Analysis of Water Samples Collected from Mill Pond, September 13, 1971, October 6, 1971.

[7] California Regional Water Quality Control Board, North Coast Region, Order No. 75-12, Waste Discharge Requirements for Georgia-Pacific Corporation/Louisiana-Pacific Corporation, April 21, 1975, p.2.

[8] California Regional Water Quality Control Board, North Coast Region, Order No. 75-12, Waste Discharge Requirements for Georgia-Pacific Corporation/Louisiana-Pacific Corporation, April 21, 1975, p.1.

[9] Letter from Reichmuth, F. (RWQCB) to Stalker, A.K. (Louisiana-Pacific Corporation), Re: Inspection of Louisiana-Pacific Corporation's Plywood Mill, April 1, 1976.

[10] US EPA, Development Document for Proposed Effluent Limitations Guidelines and New Source Performance Standards for the Plywood, Hardboard, and Wood Preserving Segment of the Timber Products Processing Point Source Category, December 1973, p. 73.

[11] US EPA, Development Document for Proposed Effluent Limitations Guidelines and New Source Performance Standards for the Plywood, Hardboard, and Wood Preserving Segment of the Timber Products Processing Point Source Category, December 1973, p. 78 and 80-81.

[12] Garcia and Associates, Transitions Over Time: A Chronologic Perspective of the Union Lumber Company Lumber Mill, Fort Bragg, Mendocino County, California, July, 2008, p. 83; RWQCB, Waste Discharge Requirements for William J. Blinn Trust, Glass Beach Property (Former Fort Bragg Dump) Clean Closure of the Solid Waste Disposal Site, Order No. RI-2002-0099, p.1; Summary Table, References to the Dump from City Council Minutes, Dated 1949-1970; Fort Bragg Chamber of Commerce, Glass Beach – From Trash to Treasure (http://www.fortbragg.com/explore/glass-beach/); Aerial photographs from 1942, 1948 and 1957.

[13] Garcia and Associates, Transitions Over Time: A Chronologic Perspective of the Union Lumber Company Lumber Mill, Fort Bragg, Mendocino County, California, July, 2008, p. 83.

[14] TRC, Phase I Environmental Site Assessment, Georgia Pacific, California Wood Products Manufacturing Division, March 2004, pp. 16-17.

[15] ARCADIS, Preliminary Site Investigation Work Plan Operable Unit E - Ponds, Former Georgia-Pacific Wood Products Facility, December 2007, p.2-2 – 2-4; Winzler & Kelly, Storm Drainage Master Plan, City of Fort Bragg California, October 2004, pp. 3 & 13; personal communication with ARCADIS personnel.

[16] ARCADIS, Mill Pond Storm Water Sampling Report, Former Georgia-Pacific Wood Products Facility, April 2012, Figure 1-2.

[17] ARCADIS, Preliminary Site Investigation Work Plan Operable Unit E - Ponds, Former Georgia-Pacific Wood Products Facility, December 2007, p.2-2, Figure 2-2.

[18] ARCADIS, Mill Pond Storm Water Sampling Report, Former Georgia-Pacific Wood Products Facility, April 2012, p.2-1 – 2-2, Figure 1-2.

[19] ARCADIS, Mill Pond Storm Water Sampling Report, Former Georgia-Pacific Wood Products Facility, April 2012, p. A-4 – A-5.

29073.000398 EMF_US 49498481v3

[20] ARCADIS, Mill Pond Storm Water Sampling Report, Former Georgia-Pacific Wood Products Facility, April 2012, Tables 3-4 and 3-5.
[21] ARCADIS, Mill Pond Storm Water Sampling Report, Former Georgia-Pacific Wood Products Facility, April 2012, Tables 3-4 and 3-5.
[22] ARCADIS, Mill Pond Storm Water Sampling Report, Former Georgia-Pacific Wood Products Facility, April 2012, Tables 3-4 and 3-5.

# EXHIBIT Q
# TO THE CITY OF FORT BRAGG'S SPECIAL
# REQUESTS FOR ADMISSIONS, SET TWO

## 30(b)(6) Deposition Preparation Notes
### *Former Fort Bragg Mill Site, Fort Bragg, CA*

Subject 59: *All areas of the mill site that GP alleges City stormwater flowed onto.*

GP Position

- Storm water from the City of Fort Bragg ("City") flowed into Pond 5 until 2013.  Pond 5 received City storm water that discharged into Pudding Creek and was pumped into Pond 5 until early 2013 when this practice was discontinued.[1]

- City storm water from areas adjacent to the pond also drains into Pond 5 via surface flow.[2]  This pond was historically used as a backup source of water to Pond 8.[3]

- Pond 8 receives storm water discharges from the City via two outfall pipes.  This stormwater originates from City drainage basins C and D.[4]  The City's flow from drainage basins C and D account for 54.5% of the total drainage area discharging into Pond 8.[5]

---

[1] ARCADIS, Preliminary Site Investigation Work Plan Operable Unit E - Ponds, Former Georgia-Pacific Wood Products Facility, December 2007, p.2-2 – 2-4; Winzler & Kelly, Storm Drainage Master Plan, City of Fort Bragg California, October 2004, pp. 3 & 13; personal communication with ARCADIS personnel.
[2] ARCADIS, Mill Pond Storm Water Sampling Report, Former Georgia-Pacific Wood Products Facility, April 2012, Figure 1-2.
[3] ARCADIS, Preliminary Site Investigation Work Plan Operable Unit E - Ponds, Former Georgia-Pacific Wood Products Facility, December 2007, p.2-2, Figure 2-2.
[4] ARCADIS, Mill Pond Storm Water Sampling Report, Former Georgia-Pacific Wood Products Facility, April 2012, p.2-1 – 2-2, Figure 1-2.
[5] ARCADIS, Mill Pond Storm Water Sampling Report, Former Georgia-Pacific Wood Products Facility, April 2012, p. A-4 – A-5.



# GEORGIA-PACIFIC, LLC'S RESPONSES TO THE CITY OF FORT BRAGG'S SPECIAL REQUESTS FOR ADMISSIONS, SET TWO

HUNTON & WILLIAMS LLP
Ann Marie Mortimer (SBN 169077)
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627
Telephone: (213) 532-2000
Facsimile: (213) 532-2020
E-mail: amortimer@hunton.com

HUNTON & WILLIAMS, LLP
Jeffrey F. Martin (Admitted Pro Hac Vice)
Douglas M. Garrou (Admitted Pro Hac Vice)
2200 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: 212 • 955 • 1500
Facsimile: 212 • 778 • 2201
E-mail: jmartin@hunton.com
        dgarrou@hunton.com

Attorneys for Plaintiff and Counter-Defendant
GEORGIA-PACIFIC LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGIA-PACIFIC LLC,<br><br>Plaintiff,<br><br>v.<br><br>OFFICEMAX INCORPORATED, LOUISIANA-PACIFIC CORPORATION, and THE CITY OF FORT BRAGG<br><br>Defendants. | CASE NO.: 12-cv-02797-WHO<br><br>**OBJECTIONS AND RESPONSE OF PLAINTIFF GEORGIA-PACIFIC LLC TO DEFENDANT THE CITY OF FORT BRAGG'S SECOND SET OF REQUESTS FOR ADMISSION** |
| AND RELATED COUNTERCLAIMS AND CROSS CLAIMS | **Judge: Hon. William H. Orrick** |

*Hunton & Williams LLP*
*2200 Pennsylvania Avenue, NW*
*Washington, DC 20037*

RESPONSE TO DEFENDANT THE CITY OF FORT BRAGG'S SECOND SET OF
REQUESTS FOR ADMISSION TO PLAINTIFF GEORGIA-PACIFIC LLC

PROPOUNDING PARTY:    Defendant and Counterclaimant The City of Fort Bragg

RESPONDING PARTY:    Plaintiff and Counter-defendant Georgia-Pacific LLC

SET NUMBER:    Two

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, Plaintiff and Counter-Defendant Georgia-Pacific LLC ("Georgia-Pacific"), through its counsel, responds as follows to the Second Set of Requests for Admissions ("RFAs" or "Requests") of Defendant and Counter-Claimant The City of Fort Bragg ("Fort Bragg").

**PRELIMINARY STATEMENT**

1.    Georgia-Pacific has not completed its investigation relating to this action, has not completed discovery in this action, and has not completed preparation for trial. As discovery proceeds, facts, information, evidence, documents, and things may be discovered which are not set forth in these responses, but which may have been responsive to Defendant's RFAs. The following responses are based on Georgia-Pacific's knowledge, information and belief and are complete as to Georgia-Pacific's best knowledge at this time. Georgia-Pacific assumes no obligation to voluntarily supplement or amend these responses beyond applicable legal requirements to reflect information, evidence, documents, or things discovered following service of these responses. Furthermore, these responses were prepared based on Georgia-Pacific's good faith interpretation and understanding of Defendant's RFAs and are subject to correction for inadvertent errors or omissions, if any. These responses are given without prejudice to subsequent revision, amendment, or supplementation based upon any information, evidence, and documentation which hereinafter may be discovered.

2.    Georgia-Pacific reserves the right to refer to, to conduct discovery with reference to, or to offer into evidence at the time of trial, any and all facts, evidence, documents, and things developed during the course of discovery and trial preparation, notwithstanding the reference to facts, evidence, documents, and things in these responses.

3.    Georgia-Pacific reserves all objections or other questions as to the competency, relevance, materiality, privilege or admissibility as evidence in any subsequent proceeding of its responses to Defendant's RFAs and of any information or document(s) produced in response thereto.

1

RESPONSE TO DEFENDANT THE CITY OF FORT BRAGG'S SECOND SET OF
REQUESTS FOR ADMISSION TO PLAINTIFF GEORGIA-PACIFIC LLC

Hunton & Williams LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037

4.      Georgia-Pacific responds to Defendant's RFAs as it interprets and understands them. Georgia-Pacific reserves the right to revise, amend, and/or supplement its responses if Defendant subsequently asserts an interpretation of any RFA that differs from Georgia-Pacific's current understanding.

5.      Georgia-Pacific states that, except for facts explicitly admitted herein, no admission of any nature whatsoever is to be inferred from its responses to Defendant's RFAs. The fact that Georgia-Pacific has responded to an RFA should not be taken as an admission, or a concession of the existence, of any fact set forth or assumed by such RFA, or that such response constitutes evidence of any fact thus set forth or assumed.

6.      Georgia-Pacific reserves the right to object on any grounds at any time to such other or supplemental written discovery as Defendant may at any time propound involving or relating to the subject matter covered in Defendant's RFAs.

7.      Georgia-Pacific's decision to provide any response to an RFA, notwithstanding the objectionable nature of any of the RFAs themselves, is not: (a) an acceptance of, or agreement with, any of the characterizations or purported descriptions of the transactions or events contained in the RFA; (b) a concession or admission that the material is relevant to this proceeding; (c) a waiver of the General Objections or the objections asserted in response to specific RFAs; or (d) an agreement that RFAs for similar information will be treated in a similar manner.

## GENERAL OBJECTIONS

The following General Objections apply to each of Defendant's RFAs and shall have the same force and effect as if set forth in full in response to each RFA. For emphasis and the avoidance of doubt, Georgia-Pacific may repeat one or more of these General Objections in articulating its specific objections to individual RFAs. Georgia-Pacific's decision not to repeat a General Objection in articulating its specific objections to an individual RFA should not be interpreted as a waiver of that General Objection to that individual RFA.

Hunton & Williams LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037

RESPONSE TO DEFENDANT THE CITY OF FORT BRAGG'S SECOND SET OF
REQUESTS FOR ADMISSION TO PLAINTIFF GEORGIA-PACIFIC LLC

1.      Georgia-Pacific objects to the instructions, definitions and each and every RFA to the extent that they improperly attempt to expand, alter, or modify the scope of permissible discovery under the Federal Rules of Civil Procedure and any other applicable rules.

2.      Georgia-Pacific objects to each and every RFA to the extent it seeks the disclosure of information protected from disclosure by the attorney-client privilege, the attorney work product doctrine, the mediation privilege, and/or any other available privilege or immunity.  Except as otherwise agreed between the parties, the inadvertent disclosure of any information that is confidential, privileged, was prepared in anticipation of litigation or for trial, or is otherwise irrelevant and/or immune from discovery shall not constitute a waiver of any such privilege or of any ground for objection to discovery with respect to such information, or the subject matter of the information, or of Georgia-Pacific's right to object to the use of any such information in the above captioned proceeding or elsewhere.  Georgia-Pacific further objects to each and every RFA to the extent it seeks information in violation of the right to privacy of its current or past employees.  Georgia-Pacific interprets these RFAs as not calling for the production of employee personnel records.

3.      Georgia-Pacific objects to these RFAs to the extent that they are premature including to the extent they seek information related to expert discovery.  Georgia-Pacific will timely comply with the Stipulation and Order for Modification of Discovery Deadlines and Trial Schedule entered in this case as it relates to expert disclosures and will supplement its responses to these RFAs at that time, if necessary.  Georgia-Pacific continues its investigation of all relevant facts in this case and reserves its right to supplement or change these responses and objections.  Georgia-Pacific's responses and objections to Defendant's RFAs are based on information presently known to Georgia-Pacific.

4.      Georgia-Pacific objects to each and every RFA to the extent it is duplicative, cumulative, seeks information that may be obtained from other sources or through other means of discovery that are more convenient, more efficient, more practical, less burdensome, or less expensive.  Georgia-Pacific further objects to each and every RFA to the extent the burden and

Hunton & Williams LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037

3

RESPONSE TO DEFENDANT THE CITY OF FORT BRAGG'S SECOND SET OF
REQUESTS FOR ADMISSION TO PLAINTIFF GEORGIA-PACIFIC LLC

expense of responding outweighs its likely benefit. In particular, Georgia-Pacific objects to providing information from any third-party from which the parties have agreed to jointly obtain documents.

5.      Georgia-Pacific objects to each and every RFA to the extent it seeks, or may be construed to seek, information that is publicly-available; that are already in the possession, custody, or control of Defendant; or that are available to Defendant from another source; on the grounds that such information is equally available to Defendant. Any such RFA is unduly burdensome, vexatious, and served for no purpose other than to harass and to increase Georgia-Pacific's litigation costs.

6.      Georgia-Pacific objects to each and every RFA to the extent that it calls for information that is not within Georgia-Pacific's possession, custody, or control.

7.      Georgia-Pacific objects to each and every RFA to the extent it seeks information not relevant to the claims or defenses of any party to this action, or is not reasonably calculated to lead to the discovery of admissible evidence.

8.      Georgia-Pacific objects to the RFAs to the extent that, individually and as a whole, they are overly broad, unduly burdensome, vague and ambiguous.

9.      Georgia-Pacific objects to the RFAs to the extent they seek confidential, proprietary, trade secret or other commercially sensitive material or information. To the extent the RFAs seek such information, they will only be disclosed pursuant to the terms of the Stipulated Protective Order(s) approved by the Court.

10.     Georgia-Pacific objects to the RFAs to the extent they seek information inconsistent with the current or future agreements between the parties.

11.     Georgia-Pacific objects to the RFAs to the extent that they seek information from Georgia-Pacific's Electronically Stored Information ("ESI"). Georgia-Pacific seeks to identify and produce evidence contained in its ESI that is relevant to this case and that has not been previously produced. However, due to the quantity of the ESI to be searched, the parties continue to meet and confer regarding an effective method of review and production of such information. Thus, Georgia-

Hunton & Williams LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037

4

**RESPONSE TO DEFENDANT THE CITY OF FORT BRAGG'S SECOND SET OF
REQUESTS FOR ADMISSION TO PLAINTIFF GEORGIA-PACIFIC LLC**

Pacific objects to Defendant's RFAs, and each of them, as overly broad, unduly burdensome and costly, oppressive and harassing, and seeking information that is not reasonably accessible to the extent that they seek information that is contained within Georgia-Pacific's ESI.

12.    With respect to RFAs which seek admission as to the authenticity or genuineness of a document, Georgia-Pacific objects to the failure to produce a copy of the document with the specific RFA, as required by Rule 36(a)(2). Because of the volume of documents produced in this case, copies of documents may exist with different Bates-number designations, and/or in some instances are part of a sequence of documents which the specific RFA does not completely include or reference. The failure to produce the complete document or the complete sequence of documents is confusing and in some instances, misleading.

## REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 24:**

Admit that, from 1973 to 2002, YOUR operations on the MILL SITE generated dioxins on the MILL SITE.

**RESPONSE TO REQUEST FOR ADMISSION NO. 24:**

Georgia-Pacific objects to this Request as vague and ambiguous because the terms "operations" and "generated" are undefined. Georgia-Pacific further objects to the time period of "from 1973 to 2002" because it is overbroad, ambiguous and inaccurate, particularly, and without limitation if it means continuous generation.

Subject to and without waiving the foregoing general or specific objections, and based on Georgia-Pacific's understanding of the terms used, Georgia-Pacific responds as follows: Georgia-Pacific ADMITS that dioxins below any level of concern may have been present on the Mill Site at some point in time before 1973, and at some point in time between 1973 and 2002. Georgia-Pacific DENIES that such dioxins were exclusively generated by, or specifically attributable to, Georgia-Pacific's operations on the Mill Site. Dioxins may be created by, among other things, open burning

Hunton & Williams LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037

RESPONSE TO DEFENDANT THE CITY OF FORT BRAGG'S SECOND SET OF
REQUESTS FOR ADMISSION TO PLAINTIFF GEORGIA-PACIFIC LLC

Pacific ADMITS only that, at some point in time between 1973 and 1991, Georgia-Pacific had knowledge about information contained in certain literature that suggested that high dose exposure to certain forms of dioxins may at sufficient doses potentially pose a health risk based on animal models. Georgia-Pacific does not admit the truth or accuracy of this literature, or that sufficient levels of dioxin existed at the Mill Site at any time between 1973 to 1991 to cause any harmful health effects. Except as specifically admitted, Georgia-Pacific DENIES this Request.

**REQUEST FOR ADMISSION NO. 29:**

Admit that, at some point from 1973 to 1991, YOU had knowledge of harmful effects of dioxins on the environment.

**RESPONSE TO REQUEST FOR ADMISSION NO. 29:**

Georgia-Pacific object's to this Request because it is vague and ambiguous as to time and what is meant by the terms "harmful effects" and "the environment."

Subject to and without waiving the foregoing general or specific objections, and based on Georgia-Pacific's understanding of the terms used, Georgia-Pacific responds as follows: Georgia-Pacific ADMITS only that, at some point in time between 1973 and 1991, Georgia-Pacific had knowledge about information contained in certain literature that suggested that high levels of certain forms of dioxins may under certain circumstances impact the environment. Georgia-Pacific does not admit the truth or accuracy of this literature, or that sufficient levels of dioxin existed at the Mill Site at any time between 1973 to 1991 to cause any harmful effects to the environment. Except as specifically admitted, Georgia-Pacific DENIES this Request.

**REQUEST FOR ADMISSION NO. 30:**

Admit that, by 1991, YOU were sued for contaminating a river in Mississippi with dioxin.

Hunton & Williams LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037

8

**RESPONSE TO REQUEST FOR ADMISSION NO. 30:**

Georgia-Pacific objects to this Request as not relevant to any claim or defense in this action, nor reasonably calculated to lead to the discovery of admissible evidence relevant to the subject matter of this action.

**REQUEST FOR ADMISSION NO. 31:**

Admit that, prior to July of 2002, YOU took no actions at the MILL SITE to investigate the existence or extent of dioxin contamination that might be in any of the PONDS on the MILL SITE.

**RESPONSE TO REQUEST FOR ADMISSION NO. 31:**

Georgia-Pacific objects to this Request because as vague and ambiguous because the terms "actions," "investigate" and "might be" are undefined.

Subject to and without waiving the foregoing general or specific objections, and based on Georgia-Pacific's understanding of the terms used, Georgia-Pacific responds as follows:  DENIED.

**REQUEST FOR ADMISSION NO. 32:**

Admit that, prior to July of 2002, YOU took no REMEDIAL ACTIONS at the MILL SITE to remediate any dioxin contamination that might be in any of the PONDS at the MILL SITE.

**RESPONSE TO REQUEST FOR ADMISSION NO. 32:**

Georgia-Pacific objects to this Request as vague and ambiguous because the terms "remediate" "contamination," and "might be" are undefined.

Subject to and without waiving the foregoing general or specific objections, and based on Georgia-Pacific's understanding of the terms used, Georgia-Pacific responds as follows:  DENIED.

**REQUEST FOR ADMISSION NO. 33:**

Admit that YOUR statements to the California Regional Water Quality Control Board ("RWQCB"), attached hereto as Exhibit E, pertaining to the amount of FLY ASH that YOU generated on the MILL SITE, are true.

Hunton & Williams LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037

9

**RESPONSE TO REQUEST FOR ADMISSION NO. 33:**

Georgia-Pacific objects to this Request as vague and ambiguous as to what statements are contemplated by the terms "pertaining to." Georgia-Pacific further objects to this Request to the extent that it calls for premature disclosure of expert information in violation of Federal Rule of Civil Procedure, Rule 26(a)(2)(D).

Subject to and without waiving the foregoing general or specific objections, and based on Georgia-Pacific's understanding of the terms used, Georgia-Pacific responds as follows: Georgia-Pacific DENIES the truth of the statements "we would need to construct a landfill area of between 7 and 24 acres, based on current rates of ash generation (1,400 cubic yards per month)," and "[w]e generate 1,400 yards of ash a month," contained in Exhibit E to the City's Requests for Admissions (Set Two), because current rates of ash generation on the MILL SITE are not 1,400 cubic yards per month.

**REQUEST FOR ADMISSION NO. 34:**

Admit that by November 22, 1987, YOU had knowledge that FLY ASH generated on the MILL SITE contained dioxin.

**RESPONSE TO REQUEST FOR ADMISSION NO. 34:**

Georgia-Pacific objects to this Request as vague and ambiguous because the term "generated" is undefined.

Subject to and without waiving the foregoing general and specific objections, Georgia-Pacific responds as follows: DENIED.

**REQUEST FOR ADMISSION NO. 35:**

Admit that, by December 1984, YOU had knowledge that YOUR wastewaters from YOUR boiler system contained cyanide, as indicated in Brown and Caldwell's report on the cyanide treatment study at the MILL SITE, attached hereto as Exhibit F.

Hunton & Williams LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037

10

**REQUEST FOR ADMISSION NO. 65:**

Admit that the document attached hereto as Exhibit K was prepared by YOUR attorneys at Hunton & Williams.

**RESPONSE TO REQUEST FOR ADMISSION NO. 65:**

Georgia-Pacific objects to this Request to the extent that it seeks information protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege or protection. Georgia-Pacific further objects to this Request because it is not relevant to any claim or defense in this action, nor reasonably calculated to lead to the discovery of admissible evidence regarding the subject matter of this action.

**REQUEST FOR ADMISSION NO. 66:**

Admit that the statements contained in Exhibit K are true.

**RESPONSE TO REQUEST FOR ADMISSION NO. 66:**

Georgia-Pacific objects to this Request as being vague and ambiguous because it is unclear what statements in Exhibit K are referenced.

Subject to and without waiving the foregoing general or specific objections, Georgia-Pacific responds as follows: Georgia-Pacific ADMITS that at the time Exhibit K was prepared, Georgia-Pacific believed the statements made in Exhibit K to be true to the best of Georgia-Pacific's knowledge and information at that time. After reasonable inquiry, the information that Georgia-Pacific knows or can readily obtain is insufficient to enable it to further admit or deny this Request. Except as specifically admitted, Georgia-Pacific DENIES this Request.

**REQUEST FOR ADMISSION NO. 67:**

Admit that, between 1996 and 2002, YOU dredged POND 7 one to two times a year.

**RESPONSE TO REQUEST FOR ADMISSION NO. 67:**

Georgia-Pacific objects to this Request as vague and ambiguous because the terms "POND 7" and "dredged" are undefined. Georgia-Pacific further objects to this Request to the extent that the

Hunton & Williams LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037

29

**REQUEST FOR ADMISSION NO. 92:**

Admit that, prior to 2002, YOU had knowledge that residents of the City of Fort Bragg dumped or placed waste on the portion of the MILL SITE that YOU refer to as "the Glass Beaches area."

**RESPONSE TO REQUEST FOR ADMISSION NO. 92:**

Georgia-Pacific objects to this Request as compound, and vague and ambiguous because the terms "dumped," "placed," and "waste" are undefined.  Georgia-Pacific further objects because the time period of "prior to 2002," is vague, ambiguous and overly broad.

Subject to and without waiving the foregoing general or specific objections, and based on Georgia-Pacific's understanding of the terms used, Georgia-Pacific responds as follows:  Georgia-Pacific ADMITS that at some point prior to 2002 Georgia-Pacific had knowledge that residents of the City of Fort Bragg had dumped or placed waste on the portion of the MILL SITE referred to as "the Glass Beaches" during periods prior to Georgia-Pacific's ownership and operation of the MILL SITE.  Except as specifically admitted, Georgia-Pacific DENIES this Request.

**REQUEST FOR ADMISSION NO. 93:**

Admit that the document attached hereto as Exhibit N was prepared by YOUR attorneys at Hunton & Williams.

**RESPONSE TO REQUEST FOR ADMISSION NO. 93:**

Georgia-Pacific objects to this Request to the extent that it seeks information protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege or protection.  Georgia-Pacific further objects to this Request because it is not relevant to any claim or defense in this action, nor reasonably calculated to lead to the discovery of admissible evidence regarding the subject matter of this action.

Hunton & Williams LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037

42

RESPONSE TO DEFENDANT THE CITY OF FORT BRAGG'S SECOND SET OF
REQUESTS FOR ADMISSION TO PLAINTIFF GEORGIA-PACIFIC LLC

**REQUEST FOR ADMISSION NO. 94:**

Admit that the statements contained in the document attached hereto as Exhibit N are true.

**RESPONSE TO REQUEST FOR ADMISSION NO. 94:**

Georgia-Pacific objects to this Request as being vague and ambiguous because it is unclear what statements in Exhibit N are referenced.

Subject to and without waiving the foregoing general or specific objections, Georgia-Pacific responds as follows:  Georgia-Pacific ADMITS that, at the time the statements contained in the document attached to the City of Fort Bragg's Requests for Admissions (Set Two) were memorialized in that writing, those statements were true representations of Georgia-Pacific's knowledge regarding costs to investigate or remediate contamination in the area referred to as "the Glass Beaches."  Except as specifically admitted, Georgia-Pacific DENIES this Request.

**REQUEST FOR ADMISSION NO. 95:**

Admit that YOUR response costs for the portion of the MILL SITE that YOU refer to as "the Glass Beaches area" are between $400,000 to $500,000.

**RESPONSE TO REQUEST FOR ADMISSION NO. 95:**

Georgia-Pacific objects to this Request to the extent that it seeks information protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege or protection.  Georgia-Pacific further objects to this Request to the extent that it calls for premature disclosure of expert information in violation of Federal Rule of Civil Procedure, Rule 26(a)(2)(D). Georgia-Pacific further objects to this Request as vague and ambiguous because the phrase or term "response costs" is undefined.

Subject to and without waiving the foregoing general or specific objections, and based on Georgia-Pacific's understanding of the terms used, Georgia-Pacific responds as follows:  This Request seeks information or a conclusion for which expert testimony may be required, and therefore it calls for premature disclosure of expert information in violation of Federal Rule of Civil Procedure, Rule 26(a)(2)(D). After reasonable inquiry, the information that Georgia-Pacific knows

Hunton & Williams LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037

RESPONSE TO DEFENDANT THE CITY OF FORT BRAGG'S SECOND SET OF
REQUESTS FOR ADMISSION TO PLAINTIFF GEORGIA-PACIFIC LLC

Pacific ADMITS that it burned demolition wood waste or urban wood waste, in addition to other fuel, on certain occasions after January 1, 2000, specifically during the time periods of April through December 2000, and from January 1 through October 31, 2001. Georgia-Pacific further ADMITS that the Mendocino County AQMD on August 9, 2001 issued a "violation of Title 5 Permit to Operate" due to "unapproved combustibles in urban woodwaste pile." Except as specifically admitted, Georgia-Pacific DENIES this Request.

**REQUEST FOR ADMISSION NO. 99:**

Admit that, at the time you burned MUNICIPAL WOOD on the MILL SITE, YOU had knowledge that the burning of MUNICIPAL WOOD generated inordinately high concentrations of dioxins.

**RESPONSE TO REQUEST FOR ADMISSION NO. 99:**

Georgia-Pacific objects to this Request because it is vague and ambiguous as to what is meant by the terms "you," "generated," and "inordinately high concentrations." Georgia-Pacific further objects to this Request to the extent that it is compound. Georgia-Pacific further objects to this Request to the extent that it calls for premature disclosure of expert information in violation of Federal Rule of Civil Procedure, Rule 26(a)(2)(D).

Subject to and without waiving the foregoing general or specific objections, and based on Georgia-Pacific's understanding of the terms used, Georgia-Pacific responds as follows: This Request seeks information or a conclusion for which expert testimony may be required, and therefore it calls for premature disclosure of expert information in violation of Federal Rule of Civil Procedure, Rule 26(a)(2)(D). After reasonable inquiry, the information that Georgia-Pacific knows or can readily obtain is insufficient to enable it to further admit or deny this Request. Except as specifically admitted, Georgia-Pacific DENIES this Request.

Hunton & Williams LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037

Case 3:12-cv-02797-WHO   Document 238-2   Filed 08/21/14   Page 20 of 40

46

RESPONSE TO DEFENDANT THE CITY OF FORT BRAGG'S SECOND SET OF
REQUESTS FOR ADMISSION TO PLAINTIFF GEORGIA-PACIFIC LLC

**RESPONSE TO REQUEST FOR ADMISSION NO. 102:**

Georgia-Pacific objects to this Request because it is vague and ambiguous as to what is meant by the term "plastic material." Georgia-Pacific further objects to the extent that the use of the phrase "at some point from 1973 to 2002" implies continuous action, and/or to the extent the use of that phrase renders the time period indefinite.

Subject to and without waiving the foregoing general or specific objections, and based on Georgia-Pacific's understanding of the terms used, Georgia-Pacific responds as follows: Georgia-Pacific ADMITS that it burned demolition wood waste or urban wood waste, in addition to other fuel, on certain occasions after January 1, 2000, specifically during the time periods of April through December 2000, and from January I through October 31, 2001. After reasonable inquiry, the information that Georgia-Pacific knows or can readily obtain is insufficient to enable it to further admit or deny that any of the demolition wood waste or urban wood waste that made its way into the boilers contained plastic products or materials. Therefore, except as specifically admitted, Georgia-Pacific DENIES this Request.

**REQUEST FOR ADMISSION NO. 103:**

Admit that, at some point from 1973 to 2002, YOUR burning of plastic material on the MILL SITE generated dioxins on the MILL SITE.

**RESPONSE TO REQUEST FOR ADMISSION NO. 103:**

Georgia-Pacific objects to this Request because it is vague and ambiguous as to what is meant by the terms "plastic material," and "generated." Georgia-Pacific further objects to this Request to the extent that it calls for premature disclosure of expert information in violation of Federal Rule of Civil Procedure, Rule 26(a)(2)(D). Georgia-Pacific further objects to the extent that the use of the phrase "at some point from 1973 to 2002" implies continuous action, and/or to the extent the use of that phrase renders the time period indefinite.

Hunton & Williams LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037

48

Subject to and without waiving the foregoing general or specific objections, and based on Georgia-Pacific's understanding of the terms used, Georgia-Pacific responds as follows: Georgia-Pacific ADMITS that there were elevated levels of dioxin in a fly ash pile that was generated on the Mill Site as a result of the burning of demolition wood waste or urban wood waste, in addition to other fuel, on certain occasions after January 1, 2000 -- specifically during the time periods of April through December 2000, and from January I through October 31, 2001. After reasonable inquiry, the information that Georgia-Pacific knows or can readily obtain is insufficient to enable it to further admit or deny that any of the demolition wood waste or urban wood waste that made its way into the boilers contained plastic products. Therefore, except as specifically admitted, Georgia-Pacific DENIES this Request.

**REQUEST FOR ADMISSION NO. 104:**

Admit that, at some point from 1973 to 2002, wastewater which YOU discharged into the MILL POND contained copper.

**RESPONSE TO REQUEST FOR ADMISSION NO. 104:**

Georgia-Pacific objects to this Request as vague and ambiguous because the terms "wastewater" and "discharged" are undefined. Georgia-Pacific further objects to this Request to the extent that it calls for premature disclosure of expert information in violation of Federal Rule of Civil Procedure, Rule 26(a)(2)(D). Georgia-Pacific further objects to the extent that the use of the phrase "at some point from 1973 to 2002" implies continuous action, and/or to the extent the use of that phrase renders the time period indefinite.

Subject to and without waiving the foregoing general or specific objections, Georgia-Pacific responds as follows: After reasonable inquiry, the information that Georgia-Pacific knows or can readily obtain is insufficient to enable it to admit or deny this Request. Therefore, Georgia-Pacific DENIES this Request.

Hunton & Williams LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037

49

**RESPONSE TO DEFENDANT THE CITY OF FORT BRAGG'S SECOND SET OF REQUESTS FOR ADMISSION TO PLAINTIFF GEORGIA-PACIFIC LLC**

admit or deny this Request. Therefore, Georgia-Pacific DENIES any remaining portion of this Request.

**REQUEST FOR ADMISSION NO. 122:**

Admit that, at some point from 1973 to 2002, wastewater which YOU discharged into the MILL POND contained cyanide.

**RESPONSE TO REQUEST FOR ADMISSION NO. 122:**

*See* Response to RFA No. 117, which is incorporated by reference. Except as specifically admitted, Georgia-Pacific DENIES this Request.

**REQUEST FOR ADMISSION NO. 123:**

Admit that, at some point from 1973 to 2002, steam vat wastewater from the plywood plant discharged to the MILL POND, as stated in Exhibit O.

**RESPONSE TO REQUEST FOR ADMISSION NO. 123:**

Georgia-Pacific objects to this Request as vague and ambiguous because the terms "steam vat wastewater" and "plywood plant" are undefined. Georgia-Pacific further objects to the extent that the use of the phrase "at some point from 1973 to 2002" implies continuous action, and/or to the extent the use of that phrase renders the time period indefinite.

Subject to and without waiving the foregoing general or specific objections, Georgia-Pacific responds as follows: Georgia-Pacific did not operate the plywood plant at any point during its tenure at the site, and, as a result, it does not have direct or firsthand knowledge responsive to this Request. Any knowledge Georgia-Pacific has is based on secondary technical reports available to and in the possession of the City of Fort Bragg. Georgia-Pacific ADMITS that Exhibit O states that "Steam vat wastewater from the plywood plant, which operated from 1969 to 1977, was discharged to the Mill Pond (Pond 8)." At the time that Exhibit O was prepared, Georgia-Pacific believed the statements made in Exhibit O to be true to the best of Georgia-Pacific's knowledge and information at that time. Except as specifically admitted, Georgia-Pacific DENIES any remaining portion of this Request.

RESPONSE TO DEFENDANT THE CITY OF FORT BRAGG'S SECOND SET OF
REQUESTS FOR ADMISSION TO PLAINTIFF GEORGIA-PACIFIC LLC

Hunton & Williams LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037

**REQUEST FOR ADMISSION NO. 124:**

Admit that water used to sprinkle the plywood logs during plywood plant operations discharged to the MILL POND, as stated in Exhibit O.

**RESPONSE TO REQUEST FOR ADMISSION NO. 124:**

Georgia-Pacific objects to this Request as vague and ambiguous because the terms "plywood plant operations" and "discharged" are undefined. Georgia-Pacific further objects that this Request is vague and ambiguous because no time or time period is specified.

Subject to and without waiving the foregoing general or specific objections, Georgia-Pacific responds as follows: Georgia-Pacific did not operate the plywood plant at any point during its tenure at the site, and, as a result, it does not have direct or firsthand knowledge responsive to this Request. Any knowledge Georgia-Pacific has is based on secondary technical reports available to and in the possession of the City of Fort Bragg. Georgia-Pacific admits, without relying on direct or firsthand knowledge, that it appears that at least some of the sprinkling water was discharged to the Mill Pond at some points from 1971 to 1973. Georgia-Pacific ADMITS that at the time Exhibit O was prepared, Georgia-Pacific believed the statements made in Exhibit O to be true to the best of Georgia-Pacific's knowledge and information at that time. The information that Georgia-Pacific knows or can readily obtain is insufficient to enable it to further admit or deny this Request. Therefore, except as specifically admitted, Georgia-Pacific DENIES this Request.

**REQUEST FOR ADMISSION NO. 125:**

Admit that onsite storm drains discharged to the MILL POND, as stated in Exhibit O.

**RESPONSE TO REQUEST FOR ADMISSION NO. 125:**

Georgia-Pacific objects to this Request as vague and ambiguous because the terms "storm drains" and "discharged" are undefined. Georgia-Pacific further objects that this Request is vague and ambiguous because no time or time period is specified.

Subject to and without waiving the foregoing general or specific objections, Georgia-Pacific responds as follows: This Request misstates and mischaracterizes the statements made in Exhibit O.

61

The information that Georgia-Pacific knows or can readily obtain is insufficient to enable it to further admit or deny this Request. Therefore, except as specifically admitted, Georgia-Pacific DENIES this Request.

**REQUEST FOR ADMISSION NO. 126:**

Admit that stormwater from the MILL SITE discharged to the MILL POND, as stated in Exhibit O.

**RESPONSE TO REQUEST FOR ADMISSION NO. 126:**

Georgia-Pacific objects to this Request as vague and ambiguous because the term "discharged" is undefined. Georgia-Pacific further objects that this Request is vague and ambiguous because no time or time period is specified.

Subject to and without waiving the foregoing general or specific objections, Georgia-Pacific responds as follows: This Request misstates and mischaracterizes the statements made in Exhibit O. Georgia-Pacific ADMITS that Exhibit O states "Stormwater from the City of Fort Bragg, as well as the Mill Site, drained into the Mill Pond." Georgia-Pacific ADMITS that at the time Exhibit O was prepared, Georgia-Pacific believed the statements made in Exhibit O to be true to the best of Georgia-Pacific's knowledge and information at that time. The information that Georgia-Pacific knows or can readily obtain is insufficient to enable it to further admit or deny this Request. Therefore, except as specifically admitted, Georgia-Pacific DENIES this Request.

**REQUEST FOR ADMISSION NO. 127:**

Admit that wastewater from the Former Mobile Equipment Shop was diverted to onsite storm drains, as stated in Exhibit O.

**RESPONSE TO REQUEST FOR ADMISSION NO. 127:**

Georgia-Pacific objects to this Request as vague and ambiguous because the terms "diverted" and "onsite storm drains" are undefined. Georgia-Pacific further objects that this Request is vague and ambiguous because no time or time period is specified.

Hunton & Williams LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037

62

**RESPONSE TO DEFENDANT THE CITY OF FORT BRAGG'S SECOND SET OF REQUESTS FOR ADMISSION TO PLAINTIFF GEORGIA-PACIFIC LLC**

Subject to and without waiving the foregoing general or specific objections, Georgia-Pacific responds as follows: This Request misstates and mischaracterizes the statements made in Exhibit O. Exhibit O states " 'Roundhouse/Former Mobile Equipment Shop Wastewater' appears to have been diverted to onsite storm drains that discharged to the Mill Pond." Georgia-Pacific ADMITS that at the time Exhibit O was prepared, Georgia-Pacific believed the statements made in Exhibit O to be true to the best of Georgia-Pacific's knowledge and information at that time. After reasonable inquiry, the information that Georgia-Pacific knows or can readily obtain is insufficient to enable it to further admit or deny this Request. Except as specifically admitted, Georgia-Pacific denies this Request.

**REQUEST FOR ADMISSION NO. 128:**

Admit that wastewater from the Former Mobile Equipment Shop flowed into the MILL POND, as stated in Exhibit O.

**RESPONSE TO REQUEST FOR ADMISSION NO. 128:**

Georgia-Pacific objects to this Request as vague and ambiguous because the term "flowed into" is undefined. Georgia-Pacific further objects that this Request is vague and ambiguous because no time or time period is specified.

Subject to and without waiving the foregoing general or specific objections, Georgia-Pacific responds as follows: This Request misstates and mischaracterizes the statements made in Exhibit O. Exhibit O states " 'Roundhouse/Former Mobile Equipment Shop Wastewater' appears to have been diverted to onsite storm drains that discharged to the Mill Pond." Georgia-Pacific ADMITS that at the time Exhibit O was prepared, Georgia-Pacific believed the statements made in Exhibit O to be true to the best of Georgia-Pacific's knowledge and information at that time. After reasonable inquiry, the information that Georgia-Pacific knows or can readily obtain is insufficient to enable it to further admit or deny this Request. Therefore, except as specifically admitted, Georgia-Pacific DENIES this Request.

RESPONSE TO DEFENDANT THE CITY OF FORT BRAGG'S SECOND SET OF
REQUESTS FOR ADMISSION TO PLAINTIFF GEORGIA-PACIFIC LLC

**REQUEST FOR ADMISSION NO. 129**

Admit that Cat Shop Wastewater discharged into the MILL POND, as stated in Exhibit O.

**RESPONSE TO REQUEST FOR ADMISSION NO. 129:**

Georgia-Pacific objects to this Request as vague and ambiguous because the term "discharged" is undefined. Georgia-Pacific further objects that this Request is vague and ambiguous because no time or time period is specified.

Subject to and without waiving the foregoing general or specific objections, Georgia-Pacific responds as follows: This Request misstates and mischaracterizes the statements made in Exhibit O. Exhibit O states " 'Cat Shop Wastewater' appears to have been discharged directly to the Mill Pond." Georgia-Pacific ADMITS that at the time Exhibit O was prepared, Georgia-Pacific believed the statements made in Exhibit O to be true to the best of Georgia-Pacific's knowledge and information at that time. After reasonable inquiry, the information that Georgia-Pacific knows or can readily obtain is insufficient to enable it to further admit or deny this Request. Therefore, except as specifically admitted, Georgia-Pacific DENIES this Request.

**REQUEST FOR ADMISSION NO. 130:**

Admit that Truck Wash Pond Wastewater discharged to the MILL POND, as stated in Exhibit O.

**RESPONSE TO REQUEST FOR ADMISSION NO. 130:**

Georgia-Pacific objects to this Request as vague and ambiguous because the term "discharged" is undefined. Georgia-Pacific further objects that this Request is vague and ambiguous because no time or time period is specified.

Subject to and without waiving the foregoing general or specific objections, Georgia-Pacific responds as follows: This Request misstates and mischaracterizes the statements made in Exhibit O. Exhibit O states " 'Truck Wash Pond Wastewater' appears to have been diverted to onsite storm drains that discharged to the Mill Pond." Georgia-Pacific ADMITS that at the time Exhibit O was prepared, Georgia-Pacific believed the statements made in Exhibit O to be true to the best of

Hunton & Williams LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037

RESPONSE TO DEFENDANT THE CITY OF FORT BRAGG'S SECOND SET OF
REQUESTS FOR ADMISSION TO PLAINTIFF GEORGIA-PACIFIC LLC

Georgia-Pacific's knowledge and information at that time. After reasonable inquiry, the information that Georgia-Pacific knows or can readily obtain is insufficient to enable it to further admit or deny this Request. Therefore, except as specifically admitted, Georgia-Pacific DENIES this Request.

**REQUEST FOR ADMISSION NO. 131:**

Admit that hydraulic log debarker effluent discharged into the MILL POND, as stated in Exhibit O.

**RESPONSE TO REQUEST FOR ADMISSION NO. 131:**

Georgia-Pacific objects to this Request as vague and ambiguous because the terms "hydraulic log debarker effluent" and "discharged" are undefined. Georgia-Pacific further objects that this Request is vague and ambiguous because no time or time period is specified.

Subject to and without waiving the foregoing general or specific objections, Georgia-Pacific responds as follows: This Request misstates, mischaracterizes, incompletely summarizes and/or takes of context, the statements made in Exhibit O regarding the hydraulic log debarker effluent. Georgia-Pacific ADMITS that at the time Exhibit O was prepared, Georgia-Pacific believed the statements made in Exhibit O to be true to the best of Georgia-Pacific's knowledge and information at that time. After reasonable inquiry, the information that Georgia-Pacific knows or can readily obtain is insufficient to enable it to further admit or deny this Request. Therefore, except as specifically admitted, Georgia-Pacific DENIES this Request.

**REQUEST FOR ADMISSION NO. 132:**

Admit that boiler blowdown water discharged into the MILL POND, as stated in Exhibit O.

**RESPONSE TO REQUEST FOR ADMISSION NO. 132:**

Georgia-Pacific objects to this Request because it is vague and ambiguous, particularly, and without limitation, to the extent the term "boiler blowdown water" is undefined. Georgia-Pacific further objects that this Request is vague and ambiguous, including without limitation as to time.

Hunton & Williams LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037

65

RESPONSE TO DEFENDANT THE CITY OF FORT BRAGG'S SECOND SET OF
REQUESTS FOR ADMISSION TO PLAINTIFF GEORGIA-PACIFIC LLC

Subject to and without waiving the foregoing general or specific objections, Georgia-Pacific responds as follows:  This Request misstates, mischaracterizes, incompletely summarizes and/or takes of context, the statements made in Exhibit O regarding the boiler blowdown water. Georgia-Pacific ADMITS that at the time Exhibit O was prepared, Georgia-Pacific believed the statements made in Exhibit O to be true to the best of Georgia-Pacific's knowledge and information at that time. After reasonable inquiry, the information that Georgia-Pacific knows or can readily obtain is insufficient to enable it to further admit or deny this Request.  Therefore, except as specifically admitted, Georgia-Pacific DENIES this Request.

**REQUEST FOR ADMISSION NO. 133:**

Admit that waste effluent from the power plant wet scrubbers contained FLY ASH.

**RESPONSE TO REQUEST FOR ADMISSION NO. 133:**

Georgia-Pacific objects to this Request as vague and ambiguous because the Request fails to specify location, time or scope. Georgia-Pacific further objects to this Request as being vague, ambiguous, overly broad and possibly irrelevant because, as worded, the Request does not indicate that it relates to any claim or defense in this action or that it relates to the Fort Bragg Mill Site. Georgia-Pacific further objects to this Request to the extent that it seeks admission of a scientific fact or conclusion for which expert testimony may be required, and/or to the extent that it calls for premature disclosure of expert information in violation of Federal Rule of Civil Procedure, Rule 26(a)(2)(D).

Subject to and without waiving the foregoing general or specific objections, Georgia-Pacific responds as follows: Georgia-Pacific ADMITS that for some periods from 1972 until 1981, effluent from the wet scrubbers contained some quantities of FLY ASH, and that this effluent was at times discharged to the South Settling Pond prior to being pumped to the dewatering slabs, which then flowed into Pond 7.  After 1981 and until 1996, use of the South Settling Pond ceased, and effluent was sent directly to the dewatering slabs, and then placed in a dump hopper for removal and placement offsite.  In 1996, a fly ash reinjection system was installed, which eliminated use of the

Hunton & Williams LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037

66

**REQUEST FOR ADMISSION NO. 135:**

Admit that waste effluent from the power plant wet scrubbers entered the MILL POND, as stated in Exhibit O.

**RESPONSE TO REQUEST FOR ADMISSION NO. 135:**

Georgia-Pacific objects on the ground that this Request is vague and ambiguous because no time or time period is specified.

Subject to and without waiving the foregoing general or specific objections, Georgia-Pacific responds as follows: This Request misstates, mischaracterizes, incompletely summarizes and/or takes of context, the statements made in Exhibit O regarding the waste effluent from the power plant wet scrubbers. Georgia-Pacific ADMITS that at the time Exhibit O was prepared, Georgia-Pacific believed the statements made in Exhibit O to be true to the best of Georgia-Pacific's knowledge and information at that time. After reasonable inquiry, the information that Georgia-Pacific knows or can readily obtain is insufficient to enable it to further admit or deny this Request. Therefore, except as specifically admitted, Georgia-Pacific DENIES this Request.

**REQUEST FOR ADMISSION NO. 136:**

Admit that, at some point from 1973 to 2002, SAND from the power plant boiler stack clarifiers discharged into the MILL POND, as stated in Exhibit O.

**RESPONSE TO REQUEST FOR ADMISSION NO. 136:**

Georgia-Pacific objects to this Request as vague and ambiguous because the term "power plant boiler stack clarifiers" is undefined, and because the Request fails to specify which boiler stack is being referenced. Georgia-Pacific further objects to the extent that the use of the phrase "at some point from 1973 to 2002" implies continuous action, and/or to the extent the use of that phrase renders the time period indefinite.

Subject to and without waiving the foregoing general or specific objections, Georgia-Pacific responds as follows: This Request misstates and mischaracterizes the statements made in Exhibit O.

68

Hunton & Williams LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037

Exhibit O states "Sand and fine carbon from the power plant boiler stack clarifiers flowed into the Mill Pond." Georgia-Pacific ADMITS that at the time Exhibit O was prepared, Georgia-Pacific believed the statements made in Exhibit O to be true to the best of Georgia-Pacific's knowledge and information at that time. After reasonable inquiry, the information that Georgia-Pacific knows or can readily obtain is insufficient to enable it to further admit or deny this Request. Therefore, except as specifically admitted, Georgia-Pacific DENIES this Request.

**REQUEST FOR ADMISSION NO. 137:**

Admit that, at some point from 1973 to 2002, fine carbon from the power plant boiler stack clarifiers discharged into the MILL POND, as stated in Exhibit O.

**RESPONSE TO REQUEST FOR ADMISSION NO. 137:**

Georgia-Pacific objects to this Request as vague and ambiguous because the term "power plant boiler stack clarifiers" is undefined, and because the Request fails to specify which boiler stack is being referenced. Georgia-Pacific further objects to the extent that the use of the phrase "at some point from 1973 to 2002" implies continuous action, and/or to the extent the use of that phrase renders the time period indefinite.

Subject to and without waiving the foregoing general or specific objections, Georgia-Pacific responds as follows: This Request misstates and mischaracterizes the statements made in Exhibit O. Exhibit O states "Sand and fine carbon from the power plant boiler stack clarifiers flowed into the Mill Pond." Georgia-Pacific ADMITS that at the time Exhibit O was prepared, Georgia-Pacific believed the statements made in Exhibit O to be true to the best of Georgia-Pacific's knowledge and information at that time. After reasonable inquiry, the information that Georgia-Pacific knows or can readily obtain is insufficient to enable it to further admit or deny this Request. Therefore, except as specifically admitted, Georgia-Pacific DENIES this Request.

Hunton & Williams LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037

RESPONSE TO DEFENDANT THE CITY OF FORT BRAGG'S SECOND SET OF
REQUESTS FOR ADMISSION TO PLAINTIFF GEORGIA-PACIFIC LLC

**REQUEST FOR ADMISSION NO. 138:**

Admit that water plant filter backwash was discharged to the MILL POND, as stated in Exhibit O.

**RESPONSE TO REQUEST FOR ADMISSION NO. 138:**

Georgia-Pacific objects to this Request as vague and ambiguous because the term "water plant filter backwash" is undefined. Georgia-Pacific further objects on the ground that this Request is vague and ambiguous because no time or time period is specified.

Subject to and without waiving the foregoing general or specific objections, Georgia-Pacific responds as follows: This Request misstates and mischaracterizes the statements made in Exhibit O. Exhibit O states "Water plant filter backwash was first identified in the 2001 RWQCB as a discharge source to the Mill Pond." Georgia-Pacific ADMITS that at the time Exhibit O was prepared, Georgia-Pacific believed the statements made in Exhibit O to be true to the best of Georgia-Pacific's knowledge and information at that time. After reasonable inquiry, the information that Georgia-Pacific knows or can readily obtain is insufficient to enable it to further admit or deny this Request. Therefore, except as specifically admitted, Georgia-Pacific DENIES this Request.

**REQUEST FOR ADMISSION NO. 139:**

Admit that the document attached hereto as Exhibit P was prepared by YOUR attorneys at Hunton & Williams.

**RESPONSE TO REQUEST FOR ADMISSION NO. 139:**

Georgia-Pacific objects to this Request to the extent that it seeks information protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege or protection. Georgia-Pacific further objects to this Request because it is not relevant to any claim or defense in this action, nor reasonably calculated to lead to the discovery of admissible evidence regarding the subject matter of this action.

Hunton & Williams LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037

70

**RESPONSE TO DEFENDANT THE CITY OF FORT BRAGG'S SECOND SET OF REQUESTS FOR ADMISSION TO PLAINTIFF GEORGIA-PACIFIC LLC**

**REQUEST FOR ADMISSION NO. 140:**

Admit that the statements contained in Exhibit P are true.

**RESPONSE TO REQUEST FOR ADMISSION NO. 140:**

Georgia-Pacific objects to this Request as being vague and ambiguous because it is unclear what statements in Exhibit P are referenced.

Subject to and without waiving the foregoing general or specific objections, Georgia-Pacific responds as follows: Georgia-Pacific ADMITS that at the time Exhibit P was prepared, Georgia-Pacific believed the statements made in Exhibit P to be true to the best of Georgia-Pacific's knowledge and information at that time. After reasonable inquiry, the information that Georgia-Pacific knows or can readily obtain is insufficient to enable it to further admit or deny this Request. Except as specifically admitted, Georgia-Pacific DENIES this Request.

**REQUEST FOR ADMISSION NO. 141:**

Admit that the document attached hereto as Exhibit Q was prepared by YOUR attorneys at Hunton & Williams.

**RESPONSE TO REQUEST FOR ADMISSION NO. 141:**

Georgia-Pacific objects to this Request to the extent that it seeks information protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege or protection. Georgia-Pacific further objects to this Request because it is not relevant to any claim or defense in this action, nor reasonably calculated to lead to the discovery of admissible evidence regarding the subject matter of this action.

**REQUEST FOR ADMISSION NO. 142:**

Admit that the statements contained in Exhibit Q are true.

71

**RESPONSE TO DEFENDANT THE CITY OF FORT BRAGG'S SECOND SET OF REQUESTS FOR ADMISSION TO PLAINTIFF GEORGIA-PACIFIC LLC**

**RESPONSE TO REQUEST FOR ADMISSION NO. 142:**

Georgia-Pacific objects to this Request as being vague and ambiguous because it is unclear what statements in Exhibit Q are referenced.

Subject to and without waiving the foregoing general or specific objections, Georgia-Pacific responds as follows:  Georgia-Pacific ADMITS that at the time Exhibit Q was prepared, Georgia-Pacific believed the statements made in Exhibit Q to be true to the best of Georgia-Pacific's knowledge and information at that time. After reasonable inquiry, the information that Georgia-Pacific knows or can readily obtain is insufficient to enable it to further admit or deny this Request. Except as specifically admitted, Georgia-Pacific DENIES this Request.

**REQUEST FOR ADMISSION NO. 143:**

Admit that the location of PIPE 1 in relation to the MILL POND as depicted in Exhibit B is accurate.

**RESPONSE TO REQUEST FOR ADMISSION NO. 143:**

Georgia-Pacific objects to this Request as vague and ambiguous to the extent that the definition of "PIPE 1" used by the City is either not accurate or is a mischaracterization.  Georgia-Pacific further objects to this Request to the extent that it calls for premature disclosure of expert information in violation of Federal Rule of Civil Procedure, Rule 26(a)(2)(D).

Subject to and without waiving the foregoing general and specific objections, Georgia-Pacific responds as follows:  Georgia-Pacific admits that at the time the April 2012 Mill Pond Storm Water Sampling Report was prepared, it believed the facts stated in that report to be true.  Georgia-Pacific further admits that Exhibit B explicitly states, "NOTE: PIPE LOCATIONS ARE APPROXIMATE AND NOT ALL SURFACE WATER FLOW PATHS ARE SHOWN." Therefore, except as expressly admitted, Georgia-Pacific DENIES this Request.

Hunton & Williams LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037

72

**RESPONSE TO DEFENDANT THE CITY OF FORT BRAGG'S SECOND SET OF
REQUESTS FOR ADMISSION TO PLAINTIFF GEORGIA-PACIFIC LLC**

acres or 54.5%) is urban watershed located east of the site and within the City." The report further states, "The more densely developed center of the City is comprised of two watershed units (i.e., Basins C Maple Creek and Basin D Alder Creek) that convey storm water runoff and base flow into Mill Pond via piped drainages." Finally, Exhibit B and Exhibit C explicitly state, "NOTE: PIPE LOCATIONS ARE APPROXIMATE AND NOT ALL SURFACE WATER FLOW PATHS ARE SHOWN." After reasonable inquiry, the information that Georgia-Pacific knows or can readily obtain is insufficient to enable it to further admit or deny this Request. Therefore, except as specifically admitted, Georgia-Pacific DENIES this Request.

**REQUEST FOR ADMISSION NO. 146:**

Admit that the CITY does not have any ownership interest in PIPE 1.

**RESPONSE TO REQUEST FOR ADMISSION NO. 146:**

Georgia-Pacific objects to this Request to the extent this Request seeks to compel an admission of a conclusion of law. Georgia-Pacific also objects to this Request as vague and ambiguous because the terms "ownership" and "interest" are undefined, and because the definition of "PIPE 1" used by the City is either not accurate or is a mischaracterization. Georgia-Pacific further objects to this Request because it fails to specify a point in time or time period or periods.

Subject to and without waiving the foregoing general and specific objections, Georgia-Pacific responds as follows: DENIED.

**REQUEST FOR ADMISSION NO. 147:**

Admit that the CITY does not have any ownership interest in PIPE 2.

**RESPONSE TO REQUEST FOR ADMISSION NO. 147:**

Georgia-Pacific objects to this Request to the extent this Request seeks to compel an admission of a conclusion of law. Georgia-Pacific also objects to this Request because the terms "ownership" and "interest" are undefined, and because the definition of "PIPE 2" used by the City is

Hunton & Williams LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037

RESPONSE TO DEFENDANT THE CITY OF FORT BRAGG'S SECOND SET OF
REQUESTS FOR ADMISSION TO PLAINTIFF GEORGIA-PACIFIC LLC

either not accurate or is a mischaracterization. Georgia-Pacific further objects to this Request because it fails to specify a point in time or time period or periods.

Subject to and without waiving the foregoing general and specific objections, Georgia-Pacific responds as follows: DENIED.

**REQUEST FOR ADMISSION NO. 148:**

Admit that the CITY does not have an easement for PIPE 1.

**RESPONSE TO REQUEST FOR ADMISSION NO. 148:**

Georgia-Pacific objects to this Request to the extent this Request seeks to compel an admission of a conclusion of law.

Subject to and without waiving the foregoing general and specific objections, Georgia-Pacific responds as follows:  After reasonable inquiry, Georgia-Pacific lacks sufficient information and knowledge to admit or deny whether the City has an easement interest in PIPE 1.  Therefore, except as specifically admitted, Georgia-Pacific DENIES this Request.

**REQUEST FOR ADMISSION NO. 149:**

Admit that the CITY does not have an easement for PIPE 2.

**RESPONSE TO REQUEST FOR ADMISSION NO. 149:**

Georgia-Pacific objects to this Request to the extent this Request seeks to compel an admission of a conclusion of law.

Subject to and without waiving the foregoing general and specific objections, Georgia-Pacific responds as follows: After reasonable inquiry, Georgia-Pacific lacks sufficient information and knowledge to admit or deny whether the City has an easement interest in PIPE 1.  Therefore, except as specifically admitted, Georgia-Pacific DENIES this Request.

Hunton & Williams LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037

75

**RESPONSE TO DEFENDANT THE CITY OF FORT BRAGG'S SECOND SET OF REQUESTS FOR ADMISSION TO PLAINTIFF GEORGIA-PACIFIC LLC**

DATED: June 23, 2014                    HUNTON & WILLIAMS LLP

By: _____
        Angela M. Sousa
        Attorneys for Plaintiff and Counter-
        Defendant  GEORGIA-PACIFIC LLC

Hunton & Williams LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037

76

## CERTIFICATE OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and not a party to this action. My business address is 550 South Hope Street, Suite 2000, Los Angeles, California 90071-2627.

On **JUNE 23, 2014,** I served the foregoing document(s) described as **OBJECTIONS AND RESPONSE OF PLAINTIFF GEORGIA-PACIFIC LLC TO DEFENDANT THE CITY OF FORT BRAGG'S SECOND SET OF REQUESTS FOR ADMISSION** on the interested parties in this action:

### SEE ATTACHED RIDER

☒     **By ELECTRONIC MAIL:** by causing a true and correct copy thereof to be transmitted electronically to the attorney(s) of record at the e-mail address(es) listed in the attached **RIDER.**

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on **June 23, 2014**, Los Angeles, California.



_____
Rita Kim

Hunton & Williams LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037

## R I D E R

| | |
|---|---|
| R. Gaylord Smith<br>bob.smith@lewisbrisbois.com<br>Gordon J. Calhoun<br>gordon.calhoun@lewisbrisbois.com<br>Ernest Slome<br>ernest.slome@lewisbrisbois.com<br>Michael.Johnson@lewisbrisbois.com<br>Joe.Salazar@lewisbrisbois.com<br>Robert.Slaughter@lewisbrisbois.com<br>Timothy.Swickard@lewisbrisbois.com<br>Nan.Garcia@lewisbrisbois.com<br>GeneRitti@officemax.com<br>jeffreyneumeyer@officemax.com<br>dennisradocha@officemax.com<br>melodywhigam@officemax.com<br>**LEWIS BRISBOIS BISGAARD**<br>**& SMITH LLP**<br>701 B Street, Suite 1900<br>San Diego, CA  92101<br>Telephone:  619-233-1006<br>Facsimile:   619-233-8627 | *Attorneys for Defendant and Counter-Claimant*<br>*OFFICEMAX INCORPORATED* |
| Noel Edlin<br>nedlin@behblaw.com<br>Fred M. Blum<br>fblum@behblaw.com<br>Farheena A. Habib<br>fhabib@behblaw.com<br>mtle@behblaw.com<br>**BASSI, EDLIN, HUIE & BLUM LLP**<br>500 Washington Street, Suite 700<br>San Francisco, CA 94111<br>Telephone: (415) 397-9006<br>Facsimile: (415) 397-1339 | *Attorneys for Defendant and Counter-Claimant*<br>*CITY OF FORT BRAGG* |

*Hunton & Williams LLP*
*2200 Pennsylvania Avenue, NW*
*Washington, DC 20037*

29073.000398 EMF_US 51327528v10          ii

CERTIFICATE OF SERVICE

**Re**:   **Georgia-Pacific, LLC v. OfficeMax Incorporated, Louisiana-Pacific Corporation, And The City Of Fort Bragg**
**United States District Court, Northern District Case No. 3:12-cv-02797-WHO**

**PROOF OF SERVICE – ELECTRONIC TRANSMISSION**

STATE OF CALIFORNIA/COUNTY OF San Francisco

I am a citizen of the United States and an employee in the County of San Francisco. I am over the age of eighteen (18) years and not a party to the within action. My business address is BASSI, EDLIN, HUIE & BLUM LLP, 500 Washington Street, Suite 700, San Francisco, California 94111.

On the date executed below, I electronically served the document(s) via ECF Northern District website*s*, described below, on the recipients designated on the Transaction Receipt located on the ECF Northern District website.

**DEFENDANT THE CITY OF FORT BRAGG'S EXHIBITS ISO JOINT LETTER BRIEF RE GEORGIA-PACIFIC'S RESPONSES TO THE CITY'S REQUESTS FOR ADMISSIONS, SET TWO**

On the following parties:

  PLEASE SEE SERVICE LIST PROVIDED BY ECF NORTHERN DISTRICT WEBSITE

I declare under penalty of perjury that the foregoing is true and correct and that this document is executed on August 21, 2014, at San Francisco, California.

/s/ ALISHA C. PEMBER

ALISHA C. PEMBER

949924

1

PROOF OF SERVICE